FILED IN MY OFFICE
DISTRICT COURT CLERK
1/10/2018 10:16:19 AM
WELDON J. NEFF
Valarie Baretinicich

STATE OF NEW MEXICO
COUNTY OF MCKINLEY
ELEVENTH JUDICIAL DISTRICT COURT

DENNIS MURPHY as guardian and next friend of
N.D., a minor child; DOMINIQUE BILLY and JACOB
DOTSON, Individually and as parents and natural
guardians of N.D., a minor, and DOMINIQUE BILLY on
behalf of I.C., a minor, and S.D., a minor,

   Plaintiffs,

vs.

No. D-1113-CV-2018-00011

PLAYPOWER, INC., a foreign corporation;
MIRACLE RECREATIONAL EQUIPMENT
COMPANY, a foreign corporation;
CHURCHICH RECREATION EQUIPMENT, LLC,
a Colorado company; CITY OF GALLUP, a municipality,
BLACK AND WHITE CORPORATIONS 1-10; JOHN
DOES 1-5,

   Defendants.

## COMPLAINT FOR JOINT AND SEVERAL LIABILITY
## FOR PERSONAL INJURIES AND LOSS OF CONSORTIUM

Plaintiffs Dennis Murphy, as guardian and next friend of N.D., an incapacitated minor, and Plaintiffs Dominique Billy and Jacob Dotson, individually and as parents and natural guardians of N.D., an incapacitated minor, and Dominique Billy on behalf of I.C. and S.D., minors, bring this action in negligence and strict liability for the joint and several liability of all defendants, including successor liability for additional injuries caused by medical treatment.

### Jurisdiction and Venue

1. Dennis Murphy, as guardian and next friend of N.D., resides in Santa Fe, New Mexico. Plaintiff Murphy is the court appointed Guardian Ad Litem for N.D. by Order of the Santa Fe District Court, No. D-101-CV-2017-00773.

2. N.D.'s parents, Dominique Billy and Jacob Dotson, reside in Albuquerque, New Mexico.

3. Defendant PlayPower, Inc. ("Playpower") is a Delaware corporation with its principal place of business in North Carolina, doing business in New Mexico and is the parent company of its wholly owned subsidiary, Miracle Recreational Equipment Company, Inc. and other playground equipment companies, including Little Tikes Commercial, Hags Play and Soft Play. Playpower's registered agent for service of process is The Corporation Trust Company, Corporation Trust, 1209 Orange Street, Wilmington, Delaware 19801.

4. Miracle Recreation Equipment Company ("Miracle") is an Iowa corporation with its principal place of business in Monett, Missouri doing business in New Mexico and is a wholly owned subsidiary of Playpower, Inc. Miracle and other subsidiaries of Playpower are in the business of supplying equipment for public playgrounds. Miracle distributed the product "Double Rail Climber" complained of in this matter. Miracle's registered agent for service of process is CT Corporation System, 400 E Court Ave., Des Moines, Iowa 50309.

5. Churchich Recreation Equipment, LLC ("Churchich") is a Colorado limited liability company and is a supplier/distributor of Miracle products, including the product that is the subject matter of this complaint and identified in Defendant's brochures. The agent for service of process for Churchich is Robert Churchich, residing at 7174 Four Rivers Road, Boulder, CO 80301-3736. Churchich distributed the product Double Rail Climber complained of in this matter to Defendant City of Gallup. Churchich claims to be the Miracle distributor in five states, including New Mexico.

6. Defendant City of Gallup, New Mexico ("Gallup") is a municipal corporation organized under the laws of the State of New Mexico.

7.      Immunity is waived for the City of Gallup pursuant to NMSA 1978, 41-4-6 (2007).

8.      Defendant Black and White Corporations 1-10 ("Black and White") are potential corporate defendants who may be required to pursue those claims filed by Plaintiffs. Upon discovery of these potential defendants, Plaintiffs will seek leave of the Court to file an amended complaint.

9.      Defendant John Does 1-5 ("John Does 1-5") are potential defendants which may be required to pursue those claims filed by Plaintiffs. Upon discovery of these potential defendants, Plaintiffs will seek leave of the Court to file an amended complaint.

10.     Defendants Playpower, Inc., Miracle Recreational Equipment Company and Churchich Recreation Equipment LLC are suppliers of playground equipment, including the playground equipment complained of herein, and are hereafter collectively referred to as the Defendant "Suppliers."

11.     Defendants, and each of them, are jointly and severally liable for Plaintiffs' damages.

12.     The injuries giving rise to this Complaint occurred at the Indian Hills Park Playground in Gallup, McKinley County, New Mexico on February 28, 2016.  Indian Hills Park Playground is adjacent to the Indian Hills Elementary School and is in a residential neighborhood.  At all times material hereto, Indian Hills Park Playground was a public park under the control of the Defendant City of Gallup.

13.     Venue is proper in McKinley County, Gallup, New Mexico. This Court has personal and subject matter jurisdiction over this case.

## FACTUAL ALLEGATIONS FOR ALL COUNTS

13. Each year, approximately 200,000 children suffer significant injuries related to the use of playground equipment, with 70% of those injuries occurring because of falls.

14. Companies that profit from the design, manufacture and sale of playground equipment must recognize and take measures to eliminate or minimize the safety hazards likely to cause injury to the children who will use the equipment.

15. When designing playground equipment to prevent harm from falls, companies must:

    a) Eliminate the hazard if possible;

    b) If elimination of the hazard is not possible, then reduce the severity of potential injury through safety devices or reduce the probability of an occurrence; and

    c) Provide warnings of the danger.

16. At some time before February 2016, the Defendants PlayPower, Miracle, Churchich, Black and White 1-10, and John Does 1-5, designed, manufactured, marketed and placed into the stream of commerce the Double Rail Climber.

17. The Double Rail Climber is an outdoor playground device that consists of two parallel pipes, approximately 2 inches in diameter, that are approximately 21 inches apart as depicted in photographs 1 and 2 below.

4



*Photo 1*                              *Photo 2*

18.     In order to slide down this device, children must have the sufficient size, strength and agility to clamp the parallel bars with their legs and stabilize themselves by gripping the bars with their hands while at the same time loosening that clamping and gripping in order to allow the body to slide down the apparatus.

19.     The Double Rail Climber is marketed as being suitable for children in the age range of 5 to 12 years.

20.     At all times material, N.D. was a 6-year-old girl who could reasonably be foreseen to use this product.

21.     It was foreseeable to these Defendants that the Double Rail Climber would be used by children, not only for climbing activities, but also as a slide as depicted in these Defendants' marketing materials.



*Photo 3*

5

22. Defendant Suppliers marketed and sold the Double Rail Climber to Defendant City of Gallup on April 22, 1997.

23. Defendant Suppliers provided installation instructions for playground equipment to Defendant City of Gallup for use by the general public at the Indian Hills Park Playground in Gallup, New Mexico.

24. The Double Rail Climber was installed at the Indian Hills Park Playground, City of Gallup, with no warnings or instructions designed to warn and instruct as to the use or any limitations on the use of this product.

25. Following installation of this equipment, Defendant City of Gallup was responsible for inspecting, maintaining and servicing this playground, including the equipment and surface material of the playground.

26. Before 6-year old N.D. was injured, Defendant City of Gallup had been instructed, warned and was aware of the necessity of regular inspections and the necessity of maintaining the surface material in a manner that would protect a child falling from playground equipment.

27. The duties imposed on Defendant City of Gallup included, without limitation, assuring that the equipment was reasonably safe for all users, that instructions for use and warnings were maintained, and that users should be warned and/or instructed as to any safety issues associated with use by small children. This included maintenance of surface materials to minimize potential for injury in the event of a fall.

28. Several years before this little girl was injured, the loss of safety surface material at the Indian Hills Park Playground was made known to the Defendant City of Gallup.

29. In April, 2014, in a response to an inquiry by a Gallup newspaper, Defendant City of Gallup acknowledged the loss of safety surface material at the Indian Hills Park Playground as a recurring condition and recognized that the surface material would need to be replaced as mandated by applicable federal standards and manufacturing instructions.

30. After receiving quotes for replacement material, Defendant City of Gallup either ignored the issue or a decision was made not to replace the surfacing material and restore the playground to a safe condition.

### FACTS OF THE FALL INJURY TO THE MINOR CHILD N.D.

31. On February 28, 2016, 6-year-old N.D. and her aunt went to Indian Hills Park Playground in Gallup, New Mexico to play on the playground equipment maintained by the Defendant City of Gallup and manufactured and supplied by Defendant Suppliers.

32. As part of her play activity, N.D. was attempting to slide down a structure identified in the literature of Defendant Suppliers as the Double Rail Climber.

33. The product is such that it is foreseeable that a small 6-year old child would be at an unreasonable risk of injury in using it.

34. N.D. was a petite 6-year-old child who could reasonably be foreseen to use this product as a slide.

35. On said date, 6-year-old N.D. was attempting to slide down the banister rails of the Double Rail Climber when her hands came loose from the rail and she fell backward in a pendulum motion onto deficient and inadequate surface material, striking her head and sustaining a traumatic injury to her head, necessitating medical attention. This original injury was separate and distinct from a subsequent injury suffered at the hospital.

36. After the fall, N.D. developed symptoms of head trauma that necessitated care at the Gallup Indian Medical Center. As part of that medical evaluation, the medical staff medicated N.D., intubated her and sent her for a CT scan. In the process, N.D. suffered a diffuse anoxic brain injury, which constituted either (a) an injury separate and distinct from the traumatic injury (hereinafter "the original injury"), which N.D. sustained in her fall from Defendant Suppliers' product at Defendant City of Gallup's Indian Hills Playground, or (b) a distinct enhancement of the original injury.

37. Because the original traumatic injury foreseeably necessitated medical treatment, that treatment foreseeably resulted in a separate and distinct injury to N.D. (and/or a distinct enhancement of her original injury), and that distinct second injury or enhancement foreseeably caused the further distinct injuries complained of herein (e.g. the other Plaintiffs' losses of consortium). Defendants are all jointly and severally liable for all of Plaintiffs' injuries and damages.

## COUNT I

### NEGLIGENCE, NEGLIGENCE *PER SE*, WILLFULLNESS OR RECKLESSNESS OF SUPPLIERS

Plaintiffs reallege Paragraphs 1 through 37 as though fully recited at length herein.

38. Defendant Suppliers, including Playpower, Miracle and Churchich, violated the requirement that they use ordinary care to avoid a foreseeable risk of injury to N.D. and other children caused by a condition of the product or the manner in which it is foreseeably used or misused.

39. Defendant Suppliers were negligent, negligent per se or acted willfully or recklessly in the promotion, distribution and supply of the Double Rail Climber for use by foreseeable users including small children. This negligence consists, *inter alia*, of the following:

a) Supplying this product to a playground utilized by pre-school and elementary age children without designating it as not being suitable for use by small children;

b) Deciding not to instruct, warn and provide signage that the product presented an unreasonable risk of injury to children who are either too young, too small or not possessing the coordination and strength to use the banister product as either a slide or a climber.

c) Violating safety standards and guidelines promulgated to protect children using playground equipment.

40. Miracle holds itself out as one of the oldest and largest playground equipment manufacturers in the world.

41. Miracle provides a broad range of equipment that it claims are designed to meet the industry's highest standards of safety, structural integrity and accessibility.

42. Miracle claims its products comply with the industry's most demanding guidelines from around the world, including American Society for Testing and Materials (ASTM), the Consumer Product Safety Commission (CPSC), the Canadian Standards Association (CSA) and Deutsches Institut fur Normung (DIN).

43. On information and belief, this product was marketed for installation in April, 1997.

9

44. At the time of sale, Miracle falsely claimed that it followed the guidelines and recommendations of the U.S. Consumer Product Safety Commission's (CPSC) "Handbook for Public Playground Safety" and that this product complied with Federal Standard ASTM F1487.

45. The Double Rail Climber was not and is not in compliance with the "Handbook for Public Playground Safety" or the ASTM standards that apply to playground equipment, constituting negligence *per se,* or a willful or reckless violation of one of more of the following standards:

    a) The Consumer Product Safety Commission requirement that playground equipment foreseeably used as a climber, must have something for a child to hang onto;

    b) The 1997 "Handbook for Public Playground Safety" recommended that the diameter for grip components of a climber (what you can grip to prevent a fall) for the 5- to 12-year-old user not exceed a diameter or maximum cross-sectional dimension of 0.95" to 1.55." A diameter to benefit the weakest child in each age group should be 1.25 inches.

    c) The 1995 edition of the federal standard F 1487, Standard Consumer Safety Performance Specification for Playground Equipment for Public Use, also provides that the diameter for a grip surface on a climber should be .95 to 1.55 inches (section 8.2.1).

    d) The only location on this product for gripping to aid in preventing a fall has a diameter of 2 inches, in violation of the safety standards.

    e) This product was also marketed as a slide and it was foreseeable that this product would be used as a slide.

  f)  This product does not comply with Standard F1487-95, the section that covers slides.

46. As a result of the negligence, negligence *per se*, willful and reckless decisions of the Defendants, this little girl suffered a permanent traumatic brain injury. Plaintiffs' damages proximately caused by these Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT II

## STRICT PRODUCT LIABILITY

Plaintiffs re-allege Paragraphs 1 through 46 as though fully recited at length herein.

47. Defendant Suppliers, including Playpower, Miracle and Churchich, are strictly liable for putting this defective product on the market and are liable for injury to N.D. and Plaintiffs.

48. The double rail climber/slide product supplied by these Defendants presents an unreasonable risk of injury resulting from the design and configuration of the product when used by small children.

49. The double rail climber/slide product presents an unreasonable risk of injury to foreseeable users such as N.D. who are small and do not possess the physical skills or coordination to safely use this product.

50. The product was not accompanied by necessary and needed instructions and warnings as to the enhanced potential of harm to young children.

51. Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT III

## CLAIMS AGAINST PLAYPOWER INC.

Plaintiffs re-allege Paragraphs 1 through 51 as though fully recited at length herein.

52. Playpower, Inc. is a fully integrated manufacturer of commercial recreation and leisure products. Its manufacturing facilities are located in Monett, MO, Advance, MO, Mt. Ayr, IA, Corona, CA, Aneby, Sweden and Motala, Sweden.

53. Playpower is the world's largest, fully integrated manufacturer of commercial playground equipment, floating dock systems and lifts for boats and personal water craft. The company is headquartered in Huntersville, NC with marketing, sales and manufacturing facilities in Monett & Farmington MO, Charlotte NC, Selby England, Aneby Sweden, Dorset England, Biedenkopf Germany and Majorca Spain. Playpower's goal is to lead the market in all areas in which it competes and to continue to bring innovation and fun to the marketplace.

54. Playpower distributes its product through a network of more than 150 sales representatives in the United States and 60 distributors around the world.

55. Playpower is the parent of nine wholly owned subsidiaries, which include Miracle Recreation Equipment Company, Little Tikes Commercial, and Playworld.

56. Playpower is also the parent of ~~made up of~~ seven companies focused in commercial recreation and leisure. They include Miracle Recreation Equipment Company, EZ Dock, Little Tikes Commercial, Hags Play, Soft Play L.L.C., RSS, Records and SMP, all of which are involved in a joint enterprise involving the development, sale and marketing of playground equipment to communities located all over the United States.

57. Playpower claims that its companies are leaders in the markets in which they serve and have years of experience bringing play and recreation to life.

58.     Playpower had the ultimate control in the manufacturing, advertising, and distribution over the other named Defendants, including without limitation Miracle Recreation Equipment Company, Churchich Recreation Equipment LLC, and other yet to be identified corporations, partnerships, or other entities, through both horizontal or vertical integration of Playpower and its subsidiary companies regarding the subject playground equipment involved in this litigation.

59.     At all times material through Playpower's research and design, and placing in the stream of commerce the playground equipment responsible for Plaintiffs' injuries, Playpower had the ultimate control in the design, manufacturing, advertising, and distribution over the other named Defendants, including without limitation, Miracle Recreation Equipment Company, Churchich Recreation Equipment LLC, and other yet to be identified corporations, partnerships, or other entities, through either horizontal or vertical integration of its subsidiary companies regarding the subject playground equipment.

60.     Playpower and its corporate or partnerships, subsidiaries, or other entities, were responsible for the negligent research, design, development, advertising, marketing, and sales of the Double Rail Climber placed into the stream of commerce and being sold to end users such as the Defendant City of Gallup.

61.     As a proximate result of such acts and failures to act as previously described above, Playpower was negligent and breached its duties to Plaintiffs, directly causing Plaintiffs' injuries.

62.     Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT IV

### NEGLIGENCE OR WILLFUL OR RECKLESS ACTS OF THE CITY OF GALLUP

Plaintiffs re-allege Paragraphs 1 through 62 as though fully recited at length herein.

63. Defendant City of Gallup is negligent or acted willfully or recklessly in one or more of the following respects:

    a) Maintaining the Indian Hills Park Playground in a condition that presented an unreasonable risk of injury to foreseeable invitees;

    b) Violating its duty to inspect and maintain the surface material of this playground in a reasonably safe condition;

    c) Deciding not to follow the suppliers' instructions for maintenance;

    d) Maintaining a dangerous condition to foreseeable users, including small children who would be expected to use the double rail product; and,

    e) Deciding not to place signs warning of the danger of this equipment when used by small children.

64. As a result of the negligent, willful or reckless decisions of the City of Gallup, this young child suffered a permanent traumatic brain injury. Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT V

### MULTIPLE AND SUCCESSIVE TORTFEASOR LIABILITY

Plaintiffs re-allege Paragraphs 1 through 64 as though fully recited at length herein.

65. The conduct of Defendant Suppliers and the Defendant City of Gallup were the direct and proximate cause of an original injury to N.D. which necessitated medical evaluation and treatment.

66.   It was foreseeable that a small child who had fallen to the ground off of the Double Rail Climber, and exhibited signs of a head injury, would require treatment at a hospital that would involve risk of further injury to N.D.

67.   Because that treatment did result in a separate and distinct injury to N.D. (or a distinct enhancement of the original injury), the Defendant Suppliers and the Defendant City of Gallup are jointly and severally liable for all harm caused to N.D., including the additional/enhanced injuries caused by the Gallup Indian Medical Center.

68.   It was foreseeable that additional/enhanced injuries such as N.D. suffered at the Gallup Indian Medical Center would result in N.D.'s close relatives' loss of her society and companionship, as described in Counts VI and VII below.

69.   Because the additional/enhanced injuries that N.D. suffered at the Gallup Indian Medical Center did in fact result in N.D.'s close relatives' loss of her society and companionship, which losses constituted injuries separate and distinct from those N.D. suffered at the Gallup Indian Medical Center, the Defendant Suppliers and the Defendant City of Gallup are jointly and severally liable for all harm caused to the plaintiffs other than N.D., including their respective losses of N.D.'s society and companionship.

70.   Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT VI

## LOSS OF PARENTAL CONSORTIUM

Plaintiffs re-allege Paragraphs 1 through 70 as though fully recited at length herein.

71.   Plaintiffs Dominique Billy and Jacob Dotson are the parents of N.D. and enjoyed a close and personal relationship with their daughter.  As a direct result of the negligence, negligence *per se*, willful or reckless acts of these defendants, these plaintiffs have suffered the

15

loss of the society in health of their daughter N.D. This includes the need for 24-hour supervision and care for N.D.'s needs as a profoundly brain damaged child. These parents are entitled to damages for that loss.

72. Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## COUNT VII

## LOSS OF SIBLING CONSORTIUM

Plaintiffs re-allege Paragraphs 1 through 72 as though fully recited at length herein.

73. Plaintiff I.C. is the older brother of N.D. and enjoyed a close and personal relationship with his sister, N.D.

74. S.D. is the younger brother of N.D.

75. As a direct and proximate result of the Defendants' negligent, reckless and willful decisions, Plaintiff I.C. has been denied the past, present, and future consortium with N.D.; and S.D. has been denied the present and future consortium with N.D.

76. Plaintiffs' damages proximately caused by the Defendants, jointly and severally, are alleged in the Damages section below.

## DAMAGES

77. As a direct and proximate result of the negligence and strict liability alleged herein, Defendant Suppliers, including Playpower, Miracle, Churchich, and the Defendant City of Gallup, and each of them jointly and severally, breached their duties causing injuries that were separate and distinct injuries, including disfigurement, from further injuries sustained as a result of necessary medical care, which resulted in an additional injury sustained during medical treatment at the Gallup Indian Medical Center.

78. The combination of the original injury and subject injury by medical providers caused serious, permanent, and life changing injuries to N.D. and all of the Plaintiffs, including loss of consortium, out of pocket expenses, mileage, past, present, and future medical bills, non-medical care, loss of income opportunities, loss to the value of life, and other yet to be identified damages.

79. N.D. suffered permanent and profound injuries a direct result of the combined liability of these Defendants and the strict liability of the suppliers of this product, which together with further injury resulting from necessary medical attention, resulted in extensive brain damage, including impairment of cognitive function, physical paralysis and other injurious health effects that have necessitated medical care, rehabilitation, counseling, and will require medical attention for her lifetime. N.D., I.C., and S.D. have and will suffer from mental pain and anguish, physical pain, loss of ability to enjoy life and other consequence of this injury.

WHEREFORE,

Plaintiff Murphy asks for judgment against Defendants, and each of them, jointly and severally, as follows:

a) medical care expenses in the past, present, and for the lifetime of N.D.:

b) Non-medical services, including attendant care;

c) Lost income and lost capacity to earn income to have been expected by N.D.;

d) Lost income to her parents for time taken from work to care for N.D.;

e) Pain and suffering, both mental and physical, suffered by N.D. in the past, present, and future;

f) Lost value of life;

g)  Taxable costs:

h)  Pre and post judgment interest;

i)  Punitive damages;

j)  Any and all other damages deemed warranted for damages caused by both the original injury and separate or enhanced injury caused by necessary medical care.

Plaintiffs Dominique Billy, Jacob Dotson, I.C. and S.D. pray for judgment against defendants, and each of them, jointly and severally seeking damages for:

a)  Loss of consortium for parents;

b)  Loss of consortium for children;

c)  Taxable costs;

d)  Pre and post judgment interest;

e)  Punitive damages; and

f)  Such other and further relief as the court deems proper.

Respectfully submitted,

/s/ William H. Carpenter

William H. Carpenter
WILLIAM H. CARPENTER LAW OFFICE, LTD.
Post Office Box 35070
Albuquerque, NM 87176-5070
505) 243-1336
Bill@carpenter-law.com

Randi McGinn
Katie Curry
Michael E. Sievers
MCGINN, CARPENTER, MONTOYA & LOVE, P.A.

201 Broadway Blvd. NE
Albuquerque NM  87102
(505) 843-6161
Randi@mcginnlaw.com
Katie@mcginnlaw.com
Mike@mcginnlaw.com

Theodore W. Barudin
BARUDIN LAW FIRM, P.C.
7900 Menaul NE
Albuquerque, New Mexico 87110
(505) 332-1800
tbarudin@barudinlaw.com

***ATTORNEYS FOR PLAINTIFFS***