GUEBERT
BRUCKNER
GENTILE P.C.
A T T O R N E Y S

Terry R. Guebert
Don Bruckner
Robert F. Gentile

*Of Counsel:*
RaMona G. Bootes

*Senior Attorney:*
Lawrence A. Junker

*Associates:*
Jonathan A. Garcia
Elizabeth M. Piazza
Alexander J. Ospino

February 26, 2018

**BY FEDEX OVERNIGHT:  8065 3230 8605**

Department of Health and Human Services
Office of General Counsel
General Law Division
330 Independence Avenue SW
Room 4256, Wilbur J. Cohen Federal Bldg.
Washington, D.C. 20201

**BY FEDEX OVERNIGHT:  8065 3230 8616**

Douglas G. Peter, M.D.
Chief Medical Officer
Navajo Area Indian Health Service
Hwy 264
Window Rock, AZ 86515

2018 FEB 27 AM 11:39

RECEIVED
GENERAL LAW DIVISION
OGC/DHHS

## FORM 95 – FEDERAL TORT CLAIM ACT
## IMMEDIATE ACTION REQUESTED

Re:  Claimants      :      PlayPower. Inc.; Miracle Recreation Equipment
                              Company; and Churchich Recreation Equipment, LLC
      Date of Loss  :      February 28, 2016
      Location      :      Gallup Indian Medical Center
      Our File No.  :      5290.017

Dear Sirs:

Enclosed please find PlayPower, Inc., Miracle Recreation Equipment Company, and
Churchich Recreation Equipment, LLC's Claim for Damage, Injury, or Death (Standard Form
95) with regard to the above-referenced matter.

We look forward to receiving written acknowledgement of this Form 95. Should the Agency
have any need for further information, please contact us immediately.

Department of Health and Human Services
Navajo Area Indian Health Service
February 26, 2018
Page 2

Sincerely,

GUEBERT BRUCKNER GENTILE P.C.

Terry R. Guebert
Robert F. Gentile
RaMona G. Bootes

TRG:RFG:RGB/jty
Enclosure

F:\Clients\5290.017\Letters\Form 95.PlayPower.docx

Department of Health and Human Services
Navajo Area Indian Health Service
February 26, 2018
Page 3


cc:     Daniel M. Reavy, General Counsel
        PlayPower, Inc.
        2341 W. White Oaks Drive, Suite A
        Springfield, IL 62704

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Department of Health and Human Services; Office of the General Counsel 330 Independence Avenue SW; Mail Stop: Capital Place Washington, DC 20201 | PlayPower, Inc; Miracle Recreation Equipment Company; Churchich Recreation Equipment C/O Guebert Bruckner Gentile P.C. 6801 Jefferson NE, Suite 400; Albuquerque, NM 87109 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY   ☐ CIVILIAN | | | 2/28/2016 | 4:00 pm |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached **Documentation** to Form 95

2018 FEB 27 AM 11:3 RECEIVED GENERAL LAW DIVISION OGC/DHHS

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached **Documentation** to Form 95

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| | | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | 32,000,000 | | 32,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 505-823-2300 | 2/26/18 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

N/A

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No | 17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
N/A

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side has been presented in the name of the claimant. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

EXHIBITS IN SUPPORT OF FORM 95

1.    FORM 95

2.    SUPPLEMENTAL ANSWERS FOR FORM 95

3.    COPY OF FORM 95 FILED BY CLAIMANTS, DOMINIQUE BILLY AND JACOB DOTSON AS PARENTS AND NATURAL GUARDIANS OF NATALIE DOTSON.

4.    COPY OF COMPLAINT FILED MARCH 28, 2017, STYLED *Dennis Murphy Guardian ad Litem for N.E.D., an incapacitated minor; Jacob Dotson; Dominique Billy, Individually and as next friend to I.C. and S.D., minors, v. The United States of America,* Cause No. 1:17-CV-00384 JAP/JHR (D.N.M.)

5.    COPY OF COMPLAINT FILED JANUARY 10, 2018, STYLED *Dennis Murphy Guardian and next friend of N.D., a minor child; Dominique Billy and Jacob Dotson, Individually and as parents of N.D., a minor, and Dominque Billy on behalf of I.C., a minor, and S.D., a minor, v. PlayPower, Inc., a foreign corporation; Miracle Recreation Equipment Company, a foreign corporation; Churchich Recreation Equipment, LLC, a Colorado company; City of Gallup. A municipality, Black and White Corporations 1-10; John Does 1-5,* Cause No. D-1113-CV-2018-00011. (State District Court of New Mexico)

## Supplemental Form 95 Answers for
## PLAYPOWER, INC., MIRACLE RECREATION EQUIPMENT COMPANY, and
## CHURCHICH RECREATION EQUIPMENT, LLC

**Answer to No. 2:**

The claim is brought by PlayPower, Inc., Miracle Recreation Equipment Company and Churchich Recreation Equipment, LLC.

These Defendants are represented by Guebert Bruckner Gentile P.C., 6801 Jefferson NE, Suite 400, Albuquerque, NM 87109; (505) 823-2300

**Answer to No. 8:**

This claim arises from a playground accident that occurred on February 28, 2016. On that date, 6-year-old Natalie Dotson was playing at the Indian Hills Playground in Gallup, New Mexico. While playing on a piece of equipment known as a Double Rail Climber, Natalie allegedly slipped and fell to the ground. The ground was lacking a cushioned surface. Although one had been installed when the play equipment was purchased in 1997, the wood chips had blown away. The City of Gallup had not replaced them.

Natalie was being supervised by an aunt while at the playground. After the fall, the aunt apparently took her home and put Natalie down for an afternoon nap. When Natalie woke up several hours later, she began screaming and crying and could not be comforted. So, Natalie's father, Jacob Dotson, took Natalie to the Emergency Room at the Gallup Indian Medical Center, in Gallup, NM.

Upon arrival, Natalie was immediately given dangerous paralyzing drugs by the nursing staff, was intubated by ER physician, Stephen Waite, M.D., then rushed to the X-Ray Department for a CT scan. This drastic response occurred even though Natalie's initial condition appeared normal. She had normal pupils, no seizure, no loss of consciousness, no neurological symptoms, no vomiting, no neck symptoms, no hypoxia, no bruising, and no indication of a brain injury.

The intubation was performed hastily and without an x-ray to confirm the intubation tube had been properly placed. While the CT Scan was being performed, the nursing staff realized Natalie was not breathing and her heart rate had dropped to the 40s. Natalie was over-medicated with paralyzing drugs that prevented her from breathing on her own, then incorrectly intubated, with the tube likely going into the esophagus, rather than the lungs. It is questionable whether anyone at the Gallup Indian Medical Center was watching Natalie and the monitor. None of the medical staff is able to state with certainty when Natalie began to experience a lack of oxygen. Due to the lack of oxygen, Natalie arrested in the CT scanner at about 4:36 p.m. With her heart and lungs deprived of oxygen, Natalie suffered a hypoxic anoxic brain injury.

When the staff recognized that Natalie was in an emergency condition, CPR was begun and Natalie was rushed back to the ER, where the intubation tube was removed, and a new tube was inserted. This time, an x-ray was performed to confirm the intubation tube was in the correct location.

Dr. Waite called University of New Mexico Hospital, requesting an emergency transfer to UNMH. An emergency flight crew responded, finding a 6-year-old female patient "chemically paralyzed/sedated" with an airway maintained via ETT. Responders left Gallup Indian Medical Center at 5:41 p.m., and reached UNMH at 6:45 p.m.

Natalie Dotson was diagnosed at UNMH with diffuse ischemic hypoxic anoxic brain injury and is now with significant permanent autonomic dysfunction and dystonic posturing. She will require medical care, therapies, and care givers for the remained of her life.

As a result of the negligent care provided by the Gallup Indian Medical Center and its employees and contract staff members, Natalie's parents have filed suit against the Hospital and against Kelli Jo Smith and Next Medical Staffing, LLC. Ms. Smith was a contract employee at the Gallup Indian Medical Center, and was the nurse responsible for Natalie Dotson. Next Medical Staffing was the company that employed Ms. Smith and provided her services to Gallup Indian Medical Center. That suit is styled:

> *Dennis Murphy Guardian ad Litem for N.E.D., an incapacitated minor; Jacob Dotson; Dominique Billy, Individually and as next friend to I.C. and S.D., minors, v. The United States of America,* Cause No. 1:17-CV-00384 JAP/JHR (D.N.M.)

This suit was filed March 28, 2017, in the United States District Court for the District of New Mexico. That case remains pending at this time.

The Plaintiffs in that case have asked for $32,000,000 in compensatory and special damages. At this point, the Plaintiffs believe the medical negligence by the hospital includes, but is not limited to the following acts:

1. The medical record is incomplete and has inconsistencies indicating that the treatment of Natalie at Gallup Indian Medical Center was beneath the standard of care.

2. The evaluation of Natalie was incomplete and failed to conduct a proper neurological assessment not taking into account a number of findings or observations typically seen with a brain injury that would justify a CT scan of the head and the dangerous paralyzing drugs called for as part of that procedure. The list includes, but is not limited to, no loss of consciousness, no vomiting, no evidence of trauma above the clavicle, no seizure, and no post traumatic amnesia. The presence of screaming is not typical of brain trauma that would justify the treatment offered.

3. The Glasgow Coma scale did not indicate need for emergent intubation (initial GCS was estimated at 10, however likely was higher based on the physician's physical exam notes).

4. A failure to utilize less dangerous alternative in drugs avoiding the use of paralyzing drugs, such as Versed or Ketamine.

5. Proceeding to intubation before less dangerous but equally effective measures were attempted.

6. Improper intubation and/or failure to confirm placement of the intubation tube that deprived Natalie of oxygen, in whole or in part for an unknown period of times sufficient to cause a hypoxic anoxic brain injury.

7. Dr. Waite failed to properly secure the intubation tube to assure an adequate oxygen supply.

8. Failure to properly monitor Natalie's condition after injecting drugs that paralyzed her to the point she was totally dependent on medical personnel for her oxygen supply.

9. The most probable cause of Natalie's anoxic brain injury was that the endotracheal tube had been improperly placed in the esophagus causing oxygen to go into the stomach instead of her lungs. This was not detected because there was no confirmation by x-ray, or any other means.

(*See,* Form 95 submitted by Dominique Billy and Jacob Dotson, Sept. 13, 2016, Answer to Question 8)

The present claim arises from a state court proceeding that was filed January 10, 2018, and styled:

> *Dennis Murphy Guardian and next friend of N.D., a minor child; Dominique Billy and Jacob Dotson, Individually and as parents of N.D., a minor, and Dominque Billy on behalf of I.C., a minor, and S.D., a minor, v. PlayPower, Inc., a foreign corporation; Miracle Recreation Equipment Company, a foreign corporation; Churchich Recreation Equipment, LLC, a Colorado company; City of Gallup. A municipality, Black and White Corporations 1-10; John Does 1-5,* Cause No. D-1113-CV-2018-00011.

This second lawsuit focuses on the fall that occurred at the Indian Hills playground in Gallup, NM. As reported above, Natalie was playing at the park while accompanied by her aunt. While playing on a Double Rail Climber, Natalie apparently slipped and fell. It is unknown what, if any, physical injury Natalie might have sustained. There is mention in the Gallup Indian Medical Center ER records that Natalie had a small light abrasion on her cheek. No other physical finding was noted.

Despite the lack of physical evidence of injury, the present State law suit claims that Natalie sustained a serious head injury. *See,* Complaint, ¶ 35. Plaintiffs look to Defendants, PlayPower, Inc., Miracle Recreation Equipment Company and Churhich Recreational Equipment LLC to recover for the "traumatic head injury."

More problematic, and the reason for this Form 95, is the Complaint's demand for the Court to impose multiple and successive tortfeasor liability. "Under the theory of joint and several liability, each tortfeasor is liable for the entire injury, regardless of proportional fault, leaving

it to the defendants to sort out among themselves individual responsibility based on theories of proportional indemnification or contribution." *Payne v. Hall,* 2006-NMSC-029, ¶11, 139 N.M. 659, 664, 137 P.3d 599, 604.

*Payne* goes on to explain how joint and several liability operates: "Under successive tortfeasor liability, a first injury is caused by an original tortfeasor. That injury then causally leads to a second distinct injury, or a distinct enhancement of the first injury, caused by a successive tortfeasor (hereafter distinguished as the "second injury" or the "enhanced injury"). *Payne,* 2006-NMSC-029, ¶12, 139 N.M. at 664, 137 P.3d at 604, citing to *Lujan v. Healthsouth Rehabilitation Corp.,* 1995-NMSC-057, ¶ 14, 120 N.M. 422, 426, 902 P.2d 1025, 1029. The Supreme Court explained the original tortfeasor was responsible for both injuries because "it is foreseeable as a matter of law that the original injury…may lead to a causally-distinct additional injury." *Payne, Id.* "The successive tortfeasor is only responsible for the second injury or for the distinct enhancement of the first injury." *Payne,* citing *Lewis ex rel. Lewis v. Samson,* 2001-NMSC-035, ¶34, 131 N.M 317, 35 P.3d 972 *(Lewis II).*

Joint and several liability is only permitted in those cases where a plaintiff can show more than one distinct injury successively caused by more than one tortfeasor. *Lewis II,* 2001-NMSC-035, ¶ 32. To establish joint and several liability, the plaintiff must show "the original injury and the subsequent enhancement of that injury [are] are *separate and causally-distinct injuries." Lujan,* 1995-NMSC-057, ¶ 14, 120 N.M. at 426, 902 P.2d at 1029.

In the event that Plaintiffs are able to establish "the original injury and the subsequent enhancement of that injury…" the Defendants in the State case and the United States in the federal case will then be in a position to determine individual responsibility based on theories of proportional indemnification or contribution." *Payne v. Hall,* 2006-NMSC-029, ¶11, 139 N.M. 659, 664, 137 P.3d 599, 604. It is unclear to these Defendants whether a Form 95 is required to pursue a division of financial responsibility or some type of indemnification claim, in the instance that these Defendants are held jointly and severally liable for the horrific injuries sustained by Natalie Dotson while being treated at the Gallup Indian Medical Center.

<u>Answer to No. 10</u>

Although Defendants cannot speculate about what damages a jury might award in favor of the Plaintiffs in both the federal case and the state case, it is clear that Plaintiffs are seeking compensatory damages for the loss of parental consortium; loss of consortium for Natalie Dotson; pain and suffering damages; hedonic damages; loss of income and income opportunity; past, present and future medical bills; litigation costs, compensatory damages, and other damages yet to be identified. Pursuant to the Federal Tort Claims Act, such damages are cognizable and recoverable under New Mexico law. 28 U.S.C. § 1346(b)(1).

<u>Answer to No. 11</u>

Potential witnesses include, without limitation:

> Dominique Billy
> Jacob Dotson
> Danielle Billy
> Medical Personnel of Gallup Indian Medical Center
> Medical Personnel of Gallup Med Flight
> Medical Personnel of University of New Mexico Hospital
> Representatives of PlayPower, Inc.
> Representatives of Miracle Recreation Equipment Company
> Representatives of Churchich Recreation Equipment, LLC
> Representatives of City of Gallup

# BARUDIN LAW FIRM
A Professional Corporation

**(505) 332-1800**
Albuquerque

◄◄◄ ◆ ►►►

**(505) 271-1888**
Facsimile

**(888) 298-1180**
Toll Free NM/AZ

7900 Menaul Boulevard, NE
Albuquerque, New Mexico 87110-4606

tbarudin@barudinlaw.com
www.Barudinlaw.com

September 13, 2016

*FILE COPY*

<u>VIA FEDERAL EXPRESS</u>

Douglas G. Peter, M.D.
Chief Medical Officer
Navajo Area Indian Health Service
Post Office Box 9020
Window Rock, Arizona 86515-9020

Department of Health and Human Services
Office of the General Counsel
General Law Division
330 Independence Avenue SW
Room 4256, Wilbur J. Cohen Federal Bldg.
Washington, DC. 20201

<u>FORM 95 - FEDERAL TORT CLAIM ACT</u>
<u>IMMEDIATE ACTION REQUESTED</u>

RE:   Claimant:   Dominique Billy and Jacob Dotson as Parents and Natural
Guardians of Natalie Dotson
Dominique Billy and Jacob Dotson as Parents and Natural
Guardians of Sebastian Dotson
Dominique Billy, as Parent and Natural Guardian of Isaiah
Chavez
Dominique Billy
Jacob Dotson

DOL:   February 28, 2016
LOCATION:   Gallup Indian Medical Center

Dear Sirs:

Enclosed please find Dominique Billy and Jacob Dotson as Parents and Natural Guardians of Natalie Dotson; Dominique Billy and Jacob Dotson as Parents and Natural Guardians of Sebastian Dotson; Dominique Billy, as Parent and Natural Guardian of Isaiah Chavez; Dominique Billy and Jacob Dotson's Claim for Damage, Injury, or Death (Standard Form 95) with regards to the above-referenced matter.

<u>We look forward to receiving written acknowledgment of this **Form** 95.</u> Should the Agency need any further information, please contact us immediately

Doug G. Peter, M.D.
Dept. of Health & Human Services
September 13, 2016
Page 2

Very truly yours,

BARUDIN LAW FIRM, P.C.

Theodore W. Barudin

TWB/ral
Enclosure
cc:     Dominique Billy and Jacob Dotson
        William Carpenter, Esq.
        Ron Kaplan, M.D., J.D.

# EXHIBITS IN SUPPORT OF FORM 95

1. FORM 95

2. SUPPLEMENTAL ANSWERS FOR FORM 95

3. AUTHORIZATION TO INSTITUTE CLAIM

4. MEDICAL RECORDS OF NATALIE DOTSON

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: Department of Health and Human Services Office of the General Counsel General Law Division 330 Independence Avenue SW Mail Stop: Capitol Place Washington, D.C. 20201 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. Dominique Billy and Jacob Dotson, as parents and natural guardians of Natalie Elena Dotson 4116 B Mercury Circle SE Albuquerque, NM 87116 |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ___ MILITARY _X_ CIVILIAN | | Single | Sunday, 02/28/16 | 4:00 p.m. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Documentation to Form 95

### 9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

### 10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached Documentation to Form 95

### 11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Attached Documentation to Form 95 | See Attached Documentation to Form 95 |

### 12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | $32,000,000.00 | | $32,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). BARUDIN LAW FIRM, P.C | 13b. PHONE NUMBER OF PERSON SIGNING FORM (505) 332-1800 | 14. DATE OF SIGNATURE 9/13/16 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

| Authorized for Local Reproduction Previous Edition is not Usable 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? _____ Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. _____ No

**N/A**

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? _____ Yes _____ No | 17. If deductible, state amount. |
|---|---|
| **N/A** | |

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

**N/A**

19. Do you carry public liability and property damage insurance? _____ Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). _____ No

**N/A**

INSTRUCTIONS Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed. If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency. The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative. If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form. The amount claimed should be substantiated by competent evidence as follows: (a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred. (b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment. (c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders and should be certified as being just and correct. (d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

PRIVACY ACT NOTICE This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached. A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14. B. Principal Purpose: The information requested is to be used in evaluating claims. C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information. D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

PAPERWORK REDUCTION ACT NOTICE This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

## Supplemental Form 95 Answers for DOMINIQUE BILLY and JACOB DOTSON As Parents of NATALIE DOTSON

### Answer to No. 2

The claim is brought by Dominique Billy and Jacob Dotson as parents and natural guardians of Natalie Dotson. Ms. Billy's and Mr. Dotson's address is:

4116 B. Mercury Circle SE
Albuquerque, NM 87116

Dominique Billy and Jacob Dotson have retained Theodore W. Barudin of the Barudin Law Firm, P.C. 7900 Menaul Blvd. NE, Albuquerque, NM 87110, (505) 332-1800; William H. Carpenter, Carpenter Law Firm, 201 Broadway Blvd. NE, Albuquerque, NM 87102, (505) 243-1336; Ronald Kaplan, MD, JD, of Kaplan & Lukowski, 333 Sandy Springs Circle, Suite 200, Atlanta, GA 30328, (404) 845-0012.

### Answer to No. 8

Prior to the incident complained of in this petition, Natalie Dotson was a healthy six-year-old girl, normal in all respects. On February 28, 2016, at approximately 2:00 pm, Natalie was at the Indian Hills Playground, City of Gallup, New Mexico, playing on playground equipment owned and maintained by the City of Gallup. Natalie was playing on the Bannister Slide/Climber when she fell backwards and struck the ground with her face and head suffering closed head trauma. Initially Natalie was taken to her grandmother's house. Because Natalie demonstrated symptoms consistent with a concussion and traumatic brain injury, Natalie was taken to the emergency room at Gallup Indian Medical Center at 4:02 pm to address her fall. Within less than an hour, Natalie suffered profound anoxic brain damage as a direct result of negligence on the part of medical personnel at the Gallup Indian Health Service, an agency of the United States of America. The medical record of what occurred at that facility is contained in the records contained in the attached CD. Although the records are incomplete and at times inconsistent, several acts of medical negligence are apparent from what has been provided.

The following is a list of medical negligence that is apparent from those records made available. Petitioner reserves the right to supplement these findings as more information becomes available:

1. The medical record is incomplete and has inconsistencies indicating that the treatment of Natalie at Gallup Indian Medical Center was beneath the standard of care.
2. The evaluation of Natalie was incomplete and failed to conduct a proper neurological assessment not taking into account a number of findings or observations typically seen with a brain injury that would justify a CT scan of the head and the dangerous paralyzing drugs called for as part of that procedure. The list includes, but is not limited to, no loss of consciousness, no vomiting, no evidence of trauma above

1

the clavicles, no seizure, and no post traumatic amnesia. The presence of screaming is not typical of brain trauma that would justify the treatment offered

3. The Glasgow Coma scale did not indicate need for emergent intubation (initial GCS was estimated at 10, however likely was higher based on the physicians physical exam notes).
4. A failure to utilize less dangerous alternative in drugs avoiding the use of paralyzing drugs, such as Versed or Ketamine.
5. Proceeding to intubation before less dangerous but equally effective measures were attempted.
6. Improper intubation and/or failure to confirm placement of the intubation tube that deprived Natalie of oxygen, in whole or in part for an unknown period of times sufficient to cause a hypoxic anoxic brain injury.
7. Dr. Waite failed to properly secure the intubation tube to assure an adequate oxygen supply.
8. Failure to properly monitor Natalie's condition after injecting drugs that paralyzed her to the point she was totally dependent on medical personnel for her oxygen supply.
9. The most probable cause of Natalie's anoxic brain injury was that the endotracheal tube had been improperly placed in the esophagus causing oxygen to go into the stomach instead of her lungs. This was not detected because there was no confirmation by x-ray, or any other means.

The following is a brief summary that is intended to be read in conjunction with the medical records attached.

According to the triage record, Natalie had fallen one hour previously and "laid down for nap and woke up screaming". Vital signs performed at 4:05 pm revealed temperature at 99.9, pulse at 147, respirations at 40, and oxygen saturation at 98%.

Other than crying by this six-year-old girl, all findings on the initial evaluation were normal. This included normal pupils, no seizure, no loss of consciousness, no neurological symptoms, no vomiting, no neck symptoms, no evidence of hypoxia prior to clinic visit, no bruising, and no indication of brain injury that would justify dangerous medical intervention. In short, the only reason to intubate this child and to administer paralytic drugs that deprived her of the ability to breath on her own was to quiet a noisy child.

According to the emergency department progress note dated February 28, 2016 with the reported time of 4:00 pm, Dr. Stephen Waite M.D., decided to perform rapid sequence intubation (RSI) "as patient was hysterical upon presentation". This record indicates that he intubated with a 6.5 endotracheal tube (ETT) "seen passing through the cords" before sending Natalie to the CT scanner. The trauma record, however, indicates that RSI was performed at 4:19 pm with a 6.0 tube. Yet according to Ella M. Begay, GIMC Respiratory Therapist, she was called to the emergency room at 4:30 pm for intubation and noted on arrival that "MD intubated with 6.5 and taped 17 at lip" and the patient was "still being ventilated with a bag when transported to CT for head scan". In any event, there was no chest x-ray to confirm placement of the tube. The respiratory therapy note further described the series of events that

2

occurred while in the CT scanner. Natalie's heart rate dropped to the 40's while on the CT table. CPR was initiated and she was bagged at 100% and returned to the emergency room where she was extubated and bagged, then re-intubated by Dr. Waite "with a size 6.0" taped at 15 with chest x-ray to confirm placement. The most common reason a healthy child would suddenly have a low heart rate is due to hypoxia.

To summarize, Natalie was sedated and over-medicated upon arrival at Gallup Indian Medical Center by the emergency room physician, Dr. Stephen Waite, who then intubated her at approximately 4:19 pm without obtaining a chest x-ray to confirm placement. The tube likely went into the esophagus. Directly due to this, she arrested in the CT scanner at or around 4:36 pm. Natalie's lungs and brain had been deprived of oxygen for an unknown period of time sufficient to cause a hypoxic anoxic brain injury.

During the short time between her admission and brain injury, personnel at GIMC failed to properly assess her condition, over medicated Natalie with drugs designed to paralyze her, improperly intubated in such a way to obstruct oxygen flow, failed to assure proper placement of the intubation tube, failed to monitor so oxygen deprivation was not timely recognized

Emergency flight crew personnel were dispatched to Gallup Indian Medical Center at 4:46 pm for a "neurological emergency" as requested by Dr. Waite. The responders were Johnathan Quam, EMT, and Demetrio Salazar, Nurse. They were to transport a 6-year old, 22 kg female patient with the diagnosis of head trauma to University of New Mexico Hospital. Patient contact was made at 5:06 p.m. at which time they assessed Natalie as "chemically paralyzed/sedated" with an airway maintained via ETT. Responders left Gallup Indian Medical Center with Natalie at 5:41 p.m. During flight, bag valve mask was initiated at 6:30 p.m. Due to elevated EtCO2, she was given an analgesic for increased heart and respiratory rate, and BVM was initiated a second time at 6:45 p.m. due to another elevation in EtCO2. They landed at the University of New Mexico Hospital helipad at 6:54 p.m. and Natalie was escorted to Pediatrics Intensive Care Unit #4.

Natalie Dotson was diagnosed at University of New Mexico Hospital with diffuse ischemic hypoxic anoxic brain injury and is now with significant permanent autonomic dysfunction and dystonic posturing. She will need medical care, therapies, and care givers for the balance of her life.

Claimants assert that the negligence of the United States for the acts and failures to act of the federal medical personnel at GIMC arises under New Mexico law. 28 U.S.C. § 1346(b)(1)(the Court is to apply the law of the state) in a FTCA claim. Without the benefit of conducting discovery as to facts and evidence in the negligence claims against the United States, Claimants will claim, without limitation, the following:

1. Medical Negligence including, without limitation, failure to properly assess, improper placement of intubation tube, over medication with paralyzing drug, failure to properly monitor was the cause of the hypoxic ischemic encephalopathy suffered by Natalie Dotson who was being treated for a relatively minor injury;

3

2. Negligent Supervision of doctor and nurse personnel;
3. Institutional negligence of GIMC and the USA;
4. Vicarious Liability for the acts and failures to act of the GIMC personnel;
5. Loss of consortium by sibling minors;
6. Parental loss of consortium;
7. Breach of warranty resulting in medical negligence;
8. Negligence per se.

## Answer to No. 10

The claims of Dominique Billy and Jacob Dotson on behalf of Natalie Dotson are, without limitation, for compensatory damages for the loss of parental consortium; loss of consortium for Natalie Dotson; pain and suffering damages; hedonic damages; loss of income and income opportunity; past, present and future medical bills; litigation costs, compensatory damages, and other damages yet to be identified. Pursuant to the Federal Tort Claims Act, such damages are cognizable and recoverable under New Mexico law. 28 U.S.C. § 1346(b)(1).

## Answer to No. 11

Potential witnesses include, without limitation:

- Dominique Billy;
- Jacob Dotson;
- Danielle Billy;
- Medical Personnel of Gallup Indian Medical Center
- Medical Personnel of Gallup Med Flight;
- Medical Personnel of University of New Mexico Hospital

4

# BARUDIN LAW FIRM
A Professional Corporation

◄◄◄◆►►►

(505) 332-1800
Albuquerque

(888) 298-1180
Toll Free NM/AZ

7900 Menaul Blvd., NE
Albuquerque, New Mexico 87110-4606

(505) 271-1888
Facsimile

Barudinlaw@aol.com
www.Barudinlaw.com

## AUTHORIZATION TO INSTITUTE A CLAIM
## UNDER THE FEDERAL TORT CLAIMS ACT

I, _Dominique Billy Jacab Dotson_ herby authorize the firm of Barudin Law Firm, P.C. to make a claim under the Federal Tort Claims Act.

| | | |
|---|---|---|
| Client's Signature | Mother / Father | 4/22/16 |
| | Relationship | Date |

SUBSCRIBED AND SWORN to before me this **22** day of _April_ , 20 **16**

Notary

OFFICIAL SEAL
Theodore W. Barudin
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires

Notary Signature: _____     My Commission Expires: **2/20/18**