## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, Guardian Ad Litem
for N.E.D., an incapacitated minor; JACOB
DOTSON; DOMINQUE BILLY, individually
and as next friend of I.C. and S.D., minors

       Plaintiffs,

v.                              No. 1:17-cv-00384 JAP.JHR

THE UNITED STATES OF AMERICA,

       Defendants.

## DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' SIBLING CLAIMS FOR LOSS OF CONSORTIUM

Defendant United States of America, pursuant to Federal Rule of Civil Procedure 56,
moves for summary judgment on all claims for loss of consortium brought by Plaintiffs I.C. and
S.D. resulting from the alleged injuries to their sister N.E.D.

Because the deadline for pretrial motions falls on a Federal holiday, the United States
was unable to obtain Plaintiffs' position on the motion prior to filing. Due to the nature of this
motion, the United States anticipates Plaintiffs will oppose the motion.

## INTRODUCTION

In this litigation, N.E.D.'s siblings S.D., age 2 years old, and I.C., age 15 years old, are
seeking recovery under claims for loss of consortium.  See First Amended Complaint, ¶ 50 (Doc.
51).  However, under New Mexico substantive law, a loving relationship between siblings, even
when those siblings reside together, does not create the requisite mutually dependent relationship
necessary to support a claim for loss of consortium. S*ee Wachocki v. Bernalillo Cnty. Sheriff's
Dep't*, 2010-NMCA-021, 147 N.M. 720, 228 P.3d 504; *Wachocki v. Bernalillo County Sheriff's*

*Dep't*, 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701. As shown below, N.E.D.'s siblings cannot meet the express legal standards set forth in *Wachocki I* and *Wachocki II* necessary for maintaining a loss of consortium claim. Accordingly, summary judgment on each sibling's respective loss of consortium claims is proper.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Plaintiffs I.C. and S.D. bring claims for loss of consortium based on the "loss of companionship, comfort, love, and guidance proximately caused by Defendants' negligence and the injuries to their sister, N.E.D."  First Amended Complaint, ¶ 50, (Doc. 51).

2.     Plaintiff S.D. was born on February 27, 2016, the day before the incidents described in Plaintiffs' Complaint.  *See* Ex. A, Deposition of Dominique Billy, p. 10, ll. 16-21.

3.     Plaintiff I.C. was in middle school at JFK in Gallup, New Mexico when the incidents described in Plaintiffs' Complaint occurred.  *See* Ex. B, Deposition of Jacob Dotson, p. 27, ll. 21-24.  He is currently a sophomore in high school in Gallup, New Mexico.  *See id.*, p. 31, ll. 3-10.

4.     Both I.C. and S.D. are minors.  *See* First Amended Complaint, Caption (Doc. 51).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court's function is to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party moving for summary judgment bears the initial responsibility to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. "[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the

district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1402 (10th Cir. 1996) ("Summary judgment may be granted when the moving party demonstrates there is no evidence to support the claims of the nonmoving party or that there is no genuine issue as to any material fact.").

## <u>LEGAL ARGUMENT</u>

Loss of consortium "is a method of compensation for one who has suffered the loss of a significant relational interest." *Wachocki v. Bernalillo Cnty. Sheriff's Dep't ("Wachocki I")*, 2010-NMCA-021, ¶ 50, 147 N.M. 720, 228 P.3d 504 (internal quotation marks & citation omitted), aff'd, 2011 -NMSC-039, 150 N.M. 650, 265 P.3d 701. Under New Mexico substantive law, "[a] loss-of-consortium claimant must demonstrate two elements in order to recover damages." *Wachocki v. Bernalillo County Sheriff's Dep't ("Wachocki II")*, 2011-NMSC-039, ¶ 5, 150 N.M. 650, 265 P.3d 701 (citing *Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 14, 134 N.M. 492, 79 P.3d 836). "The first element is that the claimant and the injured party shared a sufficiently close relationship." *Id.* The burden of establishing that a sufficiently close relationship exists rests on the plaintiff. *See Lozoya v. Sanchez*, 2003-NMSC-009, ¶ 29, 133 N.M. 579, 66 P.3d 948, overruled in part on other grounds by *Heath v. LaMariana Apts.*, 2008-NMSC-017, 143 N.M. 657, 180 P.3d 664. "The second element is a duty of care." *Wachocki II*, 2011-NMSC-039, ¶ 5. A defendant owes the claimant a duty of care when "it is foreseeable that the harm inflicted upon the injured party would damage the relationship between the injured party and the claimant." *Id.* Here, Plaintiffs cannot show the existence of either element with respect to N.E.D.'s siblings, and, therefore, summary judgment is proper.

## I.   S.D. AND I.C. LACKED THE REQUISITE MUTUALLY DEPENDENT RELATIONSHIP WITH THEIR SISTER.

"A very close and intimate relationship with the injured party is required to pursue an action for loss of consortium." *Fitzjerrell*, 2003-NMCA-125, ¶ 12. If a sufficiently close relationship did not exist, a plaintiff cannot maintain an action for loss of consortium. *Wachocki II*, 2011-NMSC-039, ¶¶ 11-13. To determine whether the "very close and intimate relationship" necessary for a loss of consortium claim existed, a court may consider a host of different factors, including: (i) "the duration of the relationship"; (ii) "the degree of mutual dependence"; (iii) "the extent of common contributions to a life together"; (iv) "the extent and quality of shared experience"; (v) "whether the plaintiff and the injured person were members of the same household"; (vi) "their emotional reliance on each other"; (vii) "the particulars of their day to day relationship"; and (viii) "the manner in which they related to each other in attending to life's mundane requirements." *Id*. ¶ 5 (internal quotation marks & citation omitted). However, "mutual dependence is the key factor in determining whether the claimant shared a sufficiently close relationship with the injured party." *Id*. ¶ 11 (emphasis added).

In both the *Wachocki* opinions cited above, both New Mexico's Supreme Court and Court of Appeals looked at loss of consortium claims between siblings. The Court of Appeals expressly stated that a plaintiff's status as a sibling is not itself determinative of a requisite relationship interest. *Wachocki I*, 2010-NMCA-021, ¶ 54. Upholding the opinion reached in *Wachocki I*, the Supreme Court observed that the plaintiff's relationship with his sibling did not meet the standard required by law even though the two siblings enjoyed a relationship that was described as follows:

> Jason was 15 months older than Bill and as children they had shared a bedroom together. At the time of Jason's death, they had been sharing an apartment for approximately eight months. Jason and Bill split the rent, utilities, and grocery

bills and shared household chores and cooking. The brothers enjoyed a close relationship. They spent their free time together, socializing, playing basketball, and going to the movies and the racetrack. Bill considered his older brother his role model and best friend, and he relied on Jason for advice and emotional support.

*Wachocki II*, 2011-NMSC-039, ¶ 2.

In *Wachocki II*, the New Mexico Supreme Court explained that "mutual dependence is the key factor in determining whether the claimant shared a sufficiently close relationship with the injured party." *Id*. ¶ 11. In reaching this conclusion the Supreme Court discussed *Lozoya*, 2003-NMSC-009, ¶ 29, and *Fernandez v. Walgreen Hastings Co*., 1998-NMSC-039, ¶ 29, 126 N.M. 263, 968 P.2d 774. See 2011-NMSC-039, ¶ 10. The Supreme Court stated that in both cases the claimant and the injured party were mutually dependent "and therefore the relationship was sufficiently close to permit recovery for loss of consortium." *Id*. ¶ 10. In *Lozoya*, the unmarried cohabitants and life partners were "certainly mutually dependent [given that] they jointly ran a household, made life decisions together and had made a long-term commitment to one another." *Id*. Similarly, in *Fernandez*, there was evidence of the requisite mutually dependent relationship when the "grandparent claiming loss of consortium shared a household with the granddaughter she lost and acted as the child's caretaker." *See id*. The Supreme Court noted that, "[i]n both of these situations, the parties relied on the relationship and could not enjoy life in the same way once the relationship was severed." *Id*.

However, the Supreme Court did not hold that a loving relationship is sufficient to demonstrate mutual dependence. Rather, it recognized that the requisite relationship is one in which the parties' everyday lives are spent together *and* where the parties exhibit a financial and functional dependence on one another, such as that of a primary caretaker for a toddler or a life partner. As the New Mexico Court of Appeals has explained, "a relationship that creates a

compensable interest is one that is intimate, protective, interdependent, and intertwined in functional (the way people in the relationship meet day-to-day situations together), financially interdependent, and temporal ways (spending time together at least to the extent of living together in the same household)." *Fitzjerrell*, 2003-NMCA-125, ¶ 12.

### A.      Plaintiff I.C. and N.E.D. Lacked A Mutually Dependent Relationship.

While the injury to his sister and the resultant impact on his family was no doubt an emotional one for I.C., he was not dependent on her and therefore did not suffer any compensable loss of consortium.

In *Wachocki II,* the Supreme Court expressly affirmed the opinion that siblings who were living together, sharing financial obligations and bills, sharing rent, actively participating in each other's social lives, were less than two years apart in age, shared a bedroom during childhood, were best friends at the time of death, provided each other emotional support and advice did not reach the level of mutual dependence to support a claim for loss of consortium.

In the present matter, I.C. did not depend on N.E.D. for financial support, and there is no evidence that they shared a special relationship.  While they lived together, they were approximately 8 years apart. N.E.D. did not yet attend school, and I.C. was already in middle school when the incidents occurred.  *See* UMF No. 3.  I.C. had a different father than N.E.D. Even if I.C. could show that he was close to his sister, he cannot show that they shared an emotionally, financially, or physically mutually dependent relationship similar to that between spouses, unmarried life partners, or that exists between a toddler and a primary caregiver. *See Wachocki II*, 2011-NMSC-039, ¶ 10. The absence of that type of mutually dependent relationship defeats any claim for loss of consortium.

**B.      Plaintiff S.D. and N.E.D. Lacked A Mutually Dependent Relationship.**

S.D. was born only days before N.E.D. suffered her injuries. UMF No. 2. As such, they had no established relationship at the time of her injuries.  While N.E.D. may have had an emotional reaction to her new baby brother, S.D., insufficient time had passed for S.D. to reciprocate, they were not yet living together, and certainly had not developed a mutually dependent relationship.  Nor was there ever any expectation that one would assume care of the other. As such, they cannot demonstrate a compensable loss of consortium.

In sum, there is no evidence that N.E.D.'s siblings depended on her for anything at all beyond the ordinary familial relationships and obligations that exist between loving siblings. Accordingly, they cannot show that they shared an emotionally, financially, or physically mutually dependent relationship similar to that between spouses, unmarried life partners, or between a toddler and a primary caregiver. *See Wachocki II*, 2011-NMSC-039, ¶ 10. Plaintiffs cannot show that they shared an emotionally, financially, or physically mutually dependent relationship similar to that between spouses, unmarried life partners, or between a toddler and a primary caregiver. *See Wachocki II,* 2011-NMSC-039, ¶ 10. The absence of a mutually dependent relationship defeats any claim for loss of consortium.

**II.      PLAINTIFFS' CLAIMS WERE NOT FORESEEABLE UNDER NEW
           MEXICO'S LAW ON LOSS OF CONSORTIUM.**

The second element to establish a claim for loss of consortium, is a duty of care. *Lozoya*, 2003-NMSC -009, ¶ 15, 133 N.M. 579, 66 P.3d 948. An alleged tortfeasor owes a duty of care to the claimant where it is foreseeable that the harm inflicted upon the injured party would damage the relationship between the injured party and the claimant. *Id*. Because the Court can dispose of Plaintiffs' S.D. and I.C.'s claims based on the lack of the first element - a sufficiently close relationship – it need not address foreseeability.  *See Fitzjerrell*, 2003-NMCA-125, ¶ 12 (stating

that "a duty to a prospective plaintiff springs only from the foreseeability of injury to that close and intimate bond"); *see also Fernandez*, 1998-NMSC-039, ¶ 29 (stating that foreseeability is a necessary element of the tort).

Still, under New Mexico law, even if the Court finds that Plaintiffs S.D. and I.C. had the requisite mutually dependent relationship with their sister, such a relationship was not foreseeable for the purposes of establishing a claim of loss of consortium. *See Wachocki I*, 2010-NMCA-021, ¶ 55. In *Wachocki I*, the Court of Appeals expressly observed that the mutual dependence between a toddler and a live-in primary care giver is foreseeable, while also opining that no such evidence of foreseeability existed between the two siblings living together in *Wachocki*. *Id*.  While Plaintiffs may have had a loving relationship with their sister, for all of the reasons already cited above, they cannot present evidence of a bond "equivalently powerful" to that of a primary caregiver and a small child in order to demonstrate the foreseeability necessary to establish a duty. *Wachocki I*, 2010-NMCA-021, ¶ 55; *see also Solon v. WEK Drilling Co.*, 1992-NMSC-023, ¶¶ 16, 17, 113 N.M. 566, 829 P.2d 645, (cited by *Wachocki* I, 2010-NMCA-021, ¶ 55; holding that, while it was foreseeable that an injured party would have living relatives, it was not foreseeable that an adult child would live with his parents, contribute to them financially, and enjoy a close relationship with them).

In *Peshlakai v. Ruiz*, a federal district court applying New Mexico law held that sibling loss of consortium claims were not supportable even where the siblings acted as "quasi-maternal figures" to their nieces and nephews, and had a "healthy, intimate sibling relationship in a large, close family." *Peshlakai v. Ruiz*, No. Civ. 13-0752, 2014 WL 4104712 (D.N.M. 2014). The Court further noted that, while not foreclosed, it had "not located any New Mexico cases" that

had allowed a sibling loss-of-consortium claim to proceed to the jury. *Id.* Nor does this case present any unique facts to support such a claim.  Accordingly, summary judgment is proper.

## **CONCLUSION**

Undoubtedly, N.E.D.'s siblings suffered emotionally when their sister was injured. However, New Mexico law requires a higher showing before loss of consortium claims for siblings may proceed. For all of the foregoing reasons, the United States respectfully requests that the Court grant partial summary judgment in their favor and dismiss Plaintiffs S.D. and I.C.'s claims for loss of consortium with prejudice.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Erin E. Langenwalter*
ERIN E. LANGENWALTER
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1471
Erin.langenwalter@usdoj.gov
*For Defendant United States*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

For Plaintiff:   Theodore W. Barudin – tbarudin@barudinlaw.com
Ronald Ivan Kaplan – Rik@kaplanlegal.com
William Carpenter – bill@carpenter-law.com

_/s/ Erin E. Langenwalter_
ERIN E. LANGENWALTER
Assistant United States Attorney