# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, Guardian Ad Litem
for N.E.D., an incapacitated minor; JACOB
DOTSON; DOMINQUE BILLY, individually
and as next friend of I.C. and S.D., minors

       Plaintiffs,

v.                                                               No. 1:17-cv-00384 JAP/JHR

THE UNITED STATES OF AMERICA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On March 8, 2019, Plaintiffs Dennis Murphy, Guardian Ad Litem for N.E.D., Jacob Dotson, and Dominique Billy, individually and as next friend of I.C. and S.D., minors (Plaintiffs), filed Plaintiffs' Motion in Limine to Exclude Collateral Source Evidence (Motion) (Doc. 155). In the Motion, Plaintiffs ask the Court to prohibit Defendant United States of America (Defendant or United States) "from presenting any evidence that support reducing its damages to N.E.D. for her past, present and future medical and nonmedical care because such evidence is prohibited under New Mexico's collateral source rule." (Doc. 155 at 1). On March 29, 2019, the United States filed its response, and the Motion is fully briefed.[1] On April 30, 2019, the Court held a pretrial conference and heard argument on the Motion. The Court, having considered the parties' briefing, arguments, and relevant law will grant the Motion in part and deny it in part.

---

[1] *See* THE UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE RE: COLLATERAL SOURCE. (Response) (Doc. 164); PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE COLLATERAL SOURCE EVIDENCE (Reply) (Doc. 167).

## LEGAL STANDARD

Courts have discretion in ruling on motions in limine. *See Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013). This case is scheduled for a non-jury trial and the Tenth Circuit has observed that "in bench trials questions raised relative to the admission or exclusion of evidence…become relatively unimportant, because the rules of evidence are intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict." *Tosco Corp. v. Koch Industries, Inc.*, 216 F.3d 886, 896 (10th Cir. 2000) (internal quotation marks and citation omitted). Rather, there is a presumption that in a bench trial a court will consider only competent evidence and disregard any incompetent evidence. *See id.* But motions in limine can be useful procedural tools "necessary to facilitate the efficient administration of justice." *Grand Canyon Trust v. Public Serv. Co. of N.M.*, 294 F. Supp. 2d 1246, 1247 (D.N.M. 2003). "A motion in limine provides the court with the opportunity to rule on the admissibility of evidence and thus prevents encumbering the record with irrelevant material." *Id.*

## BACKGROUND

Plaintiffs filed suit against Defendant seeking damages for alleged medical negligence, negligent training and supervision, and personal injuries under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq., and New Mexico state law. *See* First Amended Complaint (FAC).[2] Plaintiffs' claims arise out of emergency medical treatment rendered to minor child N.E.D. in February 2016 at the Gallup Indian Medical Center (GIMC), an Indian Health Services facility in Gallup, New Mexico, following the child's fall from playground equipment in a city

---

[2] *See* FIRST AMENDED COMPLAINT FOR MEDICAL NEGLIGENCE, PERSONAL INJURIES AND DAMAGES ARISING UNDER FEDERAL TORT CLAIMS ACT AND NEW MEXICO LAW (FAC) (Doc. 51).

park. Plaintiffs allege, among other things, that GIMC medical personnel failed to properly protect and monitor N.E.D.'s airway following a rapid sequence induction and intubation. *See* FAC ¶ 36. Plaintiffs claim this ultimately led to deprivation of oxygen for a period sufficient to cause N.E.D. to suffer a permanent hypoxic brain injury. *See id.*

Plaintiffs seek to bar from admission during trial "any and all evidence of collateral source payments" to which N.E.D. may be entitled as part of her past, present, and future care because such evidence is prohibited by New Mexico's collateral source rule and is "irrelevant, inadmissible, and substantially more prejudicial than probative." (Doc. 155 at 1, 15; Doc. 167 at 4-5). The United States argues that, to the extent Plaintiffs are suggesting that the United States "be precluded from presenting evidence challenging the reasonableness of Plaintiffs alleged damages, past or future, medical or non-medical" the Motion should be denied. (Doc. 164 at 5).

## DISCUSSION

The Federal Tort Claims Act (FTCA) states that the government "shall be liable [for tort claims]…in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. While the FTCA provides a mechanism for bringing a state law tort action against the United States in federal court, it does not itself create a substantive cause of action. *See Lomando v. United States,* 667 F.3d 363, 372 (3d Cir. 2011). Accordingly, the extent of the government's liability under the FTCA is determined by reference to state law. *See Haceesa v. United States,* 309 F.3d 722, 724 (10th Cir. 2002).

New Mexico courts recognize what is known at the "collateral source" rule. "The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss." *Green v. Denver & Rio Grande*

*Western R.R. Co.,* 59 F.3d 1029, 1032 (10th Cir. 1995). Under the collateral source rule, "a wrongdoer may not reduce the amount of damages he must pay to the victim by amounts already paid to the victim by an independent (or collateral) source." *Fairres v. Byrne,* No. 8-cv-1183 WJ/ACT, 2010 WL 11596239, at *1 (D. N.M. June 8, 2010). There are two primary rationales for the rule. "First, public policy favors giving the plaintiff a double recovery rather than allowing the wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source." *Green.,* 59 F.3d at 1032. The second rationale is that "by assuring a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment, the rule encourages the maintenance of insurance." *Id.*

There are "exceptions to the rule that evidence of collateral source payments is inadmissible." *Chavez v. Dennis,* No. 05-cv-186, 2006 WL 8444105, *1 (D. N.M. June 22, 2006) (discussing exceptions). Additionally, "[t]he collateral source rule generally does not apply when the collateral source is somehow identified with the tortfeasor…in a suit against the tortfeasor." *Id.* (internal quotation marks and citation omitted). Under those circumstances, "[i]n effect, the source is not sufficiently collateral to or independent of the tortfeasor; it is as if the tortfeasor himself paid." *Quinones v. Pennsylvania Gen. Ins. Co.,* 804 F.2d 1167, 1171-72 (10th Cir. 1986). The Tenth Circuit instructs that in such cases, "the tortfeasor's liability *is* reduced by the amount of payment made." *Id.* (emphasis in original). Therefore, "[i]n the context of a FTCA suit, an injured party who has already been compensated for his or her injuries can also recover damages from the United States *unless* the sources of the original compensation were funds provided by the United States." *Berg v. United States,* 806 F.2d 978, 984 (10th Cir. 1986)(emphasis added).

Plaintiffs suggest that the United States has taken a position that any damages that may be

awarded for N.E.D.'s "past, present and future medical and non-medical care should be reduced or 'off-set' by the amount that will be paid by any government funded programs." (Doc. 155 at 2).[3] Plaintiffs argue that evidence of any benefits funded from the federal government do not fall within the exception to the collateral source rule because "payments from government programs to which N.E.D.'s parents contributed are considered to come from a 'collateral source.'" (Doc. 155 at 3). Specifically, Plaintiffs argue that payment of or availability of federal public benefits such as Medicaid, Medicare, and special education support provided under Part B of the Individuals with Disabilities Education Act (IDEA), should be treated as coming from collateral sources.

The United States does not contest application of the collateral source rule to circumstances, as here, where a plaintiff seeks recovery of expenses for which the plaintiff has already been compensated by an insurer. (Doc. 164 at 2). However, the United States argues that Plaintiffs should not be permitted to extend the collateral source rule "to permit recovery of all future medical care, even if it is not actually sought, and even if it is available or provided by governmental or other sources at a reduced or no cost to the Plaintiff." (Doc. 164 at 2). Rather, the United States argues that it is permitted to challenge whether a particular medical expense is

---

[3] Plaintiffs concerns regarding the United States' potential introduction of prohibited collateral source evidence appears to stem from Plaintiffs' objection to a proposed reversionary trust instrument presented to them by the United States. In that proposed instrument, there are several clauses that require the trust administrator to first submit request for payment to other sources or benefits before turning to the trust funds. (Doc. 155 at 6-8). Whether or not a reversionary trust would be appropriate in this case is the subject of separate briefing by the parties and the Court will not address those arguments here. *See* PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE ESTABLISHMENT OF A REVERSIONARY TRUST (Doc. 156); THE UNITED STATES' RESPONSE BRIEF IN SUPPORT OF ESTABLISHMENT OF A REVERSIONARY TRUST (Doc. 163); THE UNITED STATES' BRIEF IN SUPPORT OF ESTABLISHMENT OF A REVERSIONARY TRUST (Doc. 159); PLAINTIFFS' RESPONSE TO THE UNITED STATES' BRIEF IN SUPPORT OF ESTABLISHMENT OF A REVERSIONARY TRUST (Doc. 162).

"reasonably certain to be received in the future," by presenting its own evidence that such care is unnecessary or is available at no cost or via governmental services. (Doc. 164 at 3). The United States also contends that it is allowed to present evidence that Plaintiffs have not sought or are unlikely to seek a certain type of care. (Doc. 164 at 3).

Plaintiffs' Motion is in some ways premature. Government programs and benefits such as Medicare and Medicaid have increased the complexity of applying the collateral source rule. Plaintiffs are effectively asking the Court to make a blanket ruling in a vacuum prohibiting any and all evidence of collateral source payments without information regarding actual sources of payments and write-offs for N.E.D.'s past medical expenses that Plaintiffs believe to fall under the rule and without having yet heard evidence regarding N.E.D.'s future needs. Moreover, determining whether a particular source of payment or requested "off set" is a collateral source requires a plaintiff to show that "he or she contributed to a special fund that is separate and distinct from general government revenues."[4] *Berg,* 806 F.2d at 985 (noting that in *Steckler v. United States,* 549 F.2d 1372, 1379 (10th Cir. 1977), the test the Tenth Circuit "applied to determine whether a particular payment was collateral or not focused on whether the injured party had contributed to the fund from which he or she was now collecting"). Counsel's argument in briefing that N.E.D.'s father contributed to "such funds" does not satisfy Plaintiffs' burden; rather, Plaintiffs' contention must be supported by admissible evidence.

---

[4] When determining whether a particular source of benefits or payments is collateral in the context of a dependent minor plaintiff, Courts have looked to payments into a special fund distinct from government revenues by person(s) on whom the minor plaintiff is dependent. *See, e.g., Overton v. United States,* 619 F.2d 1299, 1308 (8th Cir. 1980) ("plaintiffs receiving governmental benefits should receive their FTCA awards free of any set-off for those benefits if there is a showing or a presumption that they *or one on whom they were dependent* paid a special levy or fee to make the benefit possible") (emphasis added).

If the United States is found liable for N.E.D.'s injuries and damages are awarded, Plaintiffs should be able to make full recovery for N.E.D.'s past medical expenses against the United States, notwithstanding the fact that N.E.D.'s own insurance policy or other collateral source, may have already reimbursed Plaintiffs for these losses. New Mexico's collateral source rule is clear on this and the vast weight of authority applies the collateral source rule to allow recovery of all past medical costs despite insurance payments and write offs. *See, e.g., Prager v. Campbell Cty. Mem'l Hosp.,* 731 F.3d 1046, 1059 (10th Cir. 2013); *Pipkins v. TA Operating Corp.,* 466 F. Supp. 2d 1255, 1258-59 (D. N.M. 2006).

However, under New Mexico law, "[a] party seeking to recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty." *Sandoval v. Baker Hughes Oilfield Operations, Inc.,* 2009-NMCA-095, ¶ 25, 146 N.M. 853, 215 P.3d 791. "An award of damages is improper if it is predicated 'upon conjecture, guess, surmise or speculation.'" *Mosley v. Titus,* 762 F. Supp. 2d 1298, 1324 (D.N.M. 2010) (quoting *Sanchez v. Martinez,* 1982-NMCA-168, ¶ 20, 99 N.M. 66, 653 P.2d 897); *see also Rael v. F & S Co., Inc.,* 1979-NMCA-128, ¶ 13, 94 N.M. 507, 612 P.2d 1318 ("Damages based on surmise, conjecture or speculation cannot be sustained. Damages must be proved with reasonable certainty. There is no exception to the…rule for future damages. The ultimate fact which the plaintiff has the burden of proving is future damages reasonably certain to occur as a result of the original injury."). Accordingly, in order for the United States to be found liable for N.E.D.'s future medical expenses and care, Plaintiffs will have to prove those damages with reasonable certainty.

The United States will have the opportunity to challenge Plaintiffs' evidence with its own evidence demonstrating that such damages are unrelated to N.E.D.'s alleged injury or not

"reasonably certain" to occur. Also, the United States is not precluded from introducing evidence that the reasonable value of past medical expenses is not reflected by the billed amounts. *See Williamson v. Metro. Prop. & Cas. Ins. Co.,* No. 15-cv-958, JCH/LF, 2018 WL 1787510, at *4 (D. N.M. April 12, 2018) (holding that "[t]he policy reasons behind the collateral source doctrine compel the conclusion that the evidence of the [medical care provider's] write-offs should be excluded" but warning that the court's ruling "does not prevent Defendant from introducing evidence that the reasonable value of medical services is not reflected by the billed amounts"). Application of the collateral source rule to bar the United States from introducing competing evidence of the reasonable value of services would be inappropriate. *See id.* ("The collateral source rule does not restrict evidence concerning the reasonableness of expenses for medical services generally, but it does restrict the admission of evidence of the amount of write-downs Plaintiff, as the injured party, received as a benefit from a source separate from the tortfeasor.").

Ultimately, if the trial judge awards damages for N.E.D.'s future medical expenses and care, additional argument may be required to determine whether any off-sets the United States may request are considered collateral sources. Absent the benefit of knowing what future care needs Plaintiffs may seek, and what challenges to the reasonableness of those services the United States might bring, the Court will not speculate at this time on application of the collateral source rule to damages for future medical expenses and care. The Court declines Plaintiffs' request to issue a blanket order excluding any and all evidence of collateral source payments. Rather, the Court will grant Plaintiffs' Motion in part and exclude collateral source evidence to the extent that it is normally inadmissible as a means of showing that Plaintiffs received compensation from a collateral source for past medical expenses caused by the United States' allegedly wrongful acts.

However, the Court will deny Plaintiffs' Motion to the extent that Plaintiffs seek to exclude evidence that may be presented by the United States challenging (1) the necessity of past medical care N.E.D. received as a result of her alleged injuries; (2) whether the expense of certain necessary past medical care was reasonable; (3) whether N.E.D. is reasonably certain to receive Plaintiffs' proposed future medical and non-medical care, treatment and services;[5] and (4) the present cash value of the necessary and reasonable expenses for future medical and nonmedical care, treatment and services required by N.E.D. as a result of her alleged injuries. The trial judge will hear objections to such proffered evidence and rule upon them in the context of the trial.

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion in Limine to Exclude Collateral Source Evidence (Doc. 155) is GRANTED in part and DENIED in part as described above.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Under the New Mexico Medical Malpractice Act (MMA), "[e]xcept for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable" arising from injury to a patient as a result of malpractice shall not exceed $600,000 per occurrence. NMSA 1978, § 41-5-6(A). New Mexico's recovery cap applies in suits against the United States. *See Haceesa v. United States,* 309 F.3d 722, 726 (10th Cir. 2002). Accordingly, any "nonmedical care" referenced by Plaintiffs in briefing not falling within this exception would be capped at $600,000.