IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, Guardian Ad Litem
for N.E.D., an incapacitated minor; JACOB DOTSON;
DOMINIQUE BILLY, individually and as next friend
of I.C. and S.D., minors,

      Plaintiffs,                                  No. 1:17-cv-00384 JAP/JHR

vs.

THE UNITED STATES OF AMERICA,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[*]

This matter is before the Court on: (i) a bench trial held from September 17, 2019, through September 20, 2019; (ii) Plaintiffs' Proposed Post-Trial Findings of Fact and Conclusions of Law, filed January 10, 2020 (Doc. 245); and (iii) Defendant's Proposed Findings of Fact and Conclusions of Law, filed January 10, 2020 (Doc. 247). Prior to the start of trial, Defendant conceded liability, stipulating that its negligence caused N.E.D.'s anoxic brain injury (Doc. 217). The parties also stipulated that Defendant owed damages for N.E.D.'s pre-trial medical expenses in the amount of $500,000.00 (Doc. 216). Accordingly, the trial proceeded on the issue of remaining damages.

The Court having considered the pleadings, trial testimony, exhibits, post-trial briefing, and relevant law, finds that Plaintiffs are entitled to recover damages for N.E.D.'s injuries.

---

[*] Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

## I.   BACKGROUND

In February 2016, N.E.D., a healthy six-year-old girl, fell from playground equipment in Gallup, New Mexico. Her father, Plaintiff Jacob Dotson, brought her to the government hospital, Gallup Indian Medical Center ("GIMC"). Staff at the GIMC incorrectly intubated N.E.D., which led to an anoxic brain injury caused by oxygen deprivation.

As a result of this injury, N.E.D. will never be able to live independently or obtain gainful employment. She has extremely limited verbal ability. She must be supervised while walking, eating, and playing. Although she has made some gains through speech, occupational, and physical therapy, she will never reach a developmental stage beyond that of a toddler. Accordingly, the Court finds that it is necessary to provide for her future medical needs for the remainder of her life.

Prior to trial, the parties stipulated to a damages amount for pre-trial medical expenses. This amount, however, did not include compensation for pre-trial care provided by the parents of N.E.D., Plaintiffs Billy (mother) and Dotson (father) (Doc. 216). In addition to the damages award for N.E.D.'s future medical expenses, the Court finds that Ms. Billy's care of N.E.D., during the 1,139 days between N.E.D.'s discharge from the GIMC to the time of trial, warrants an award of damages for medical care and/or related benefits in the amount of $637,840.00.

The New Mexico Medical Malpractice Act ("MMA") caps non-medical damages at $600,000.00. *See* N.M. STAT. ANN. § 41-5-6(A), (B) (1978), *amended by* 1992 N.M. Laws ch. 33 ("Except for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable by all persons for or arising from any injury or death to a patient as a result of malpractice shall not exceed six hundred thousand dollars ($600,000) per occurrence. . . . The value of accrued medical care and related benefits shall not be subject to the six hundred thousand

dollar ($600,000) limitation."). The Court finds that Plaintiffs are entitled to $600,000.00 for their non-medical damages.

The parties agree that damages for N.E.D.'s future medical expenses are to be placed in trust for N.E.D.'s benefit. The Court finds that the total amount of N.E.D.'s future medical costs, as proved with reasonable certainty by Plaintiffs, is $14,219,657.00.

Prior to trial, Plaintiffs reached a settlement with an alleged tortfeasor, PlayPower, Inc. PlayPower is not a party to this case.[1]

The Court also awards attorney fees pursuant to the Federal Tort Claims Act statute, New Mexico Gross Receipts tax, and taxable costs, and directs that post-judgment interest be awarded in accordance with law.

## II. FINDINGS OF FACT

### A. Jurisdiction

1. Defendant's negligence in this action, resulting in injury to N.E.D., occurred in the state of New Mexico.

2. The GIMC is a federal hospital funded by the United States of America through the Department of Health and Human Services, Indian Health Service.

### B. Parties

1. N.E.D. was born on November 10, 2009 and was six years old at the time of her injury.

2. Through her mother's family, N.E.D. is of Native American descent. Her maternal grandfather was a member of the Navajo tribe.

---

[1] PlayPower, Inc. was the manufacturer of the playground slide equipment from which N.E.D. fell.

3. Plaintiff Dennis Murphy was appointed as Guardian ad Litem for N.E.D., an incapacitated minor, on March 23, 2017 in the Santa Fe District Court, Case No. D-101-CV-2017-00773.

4. Plaintiff Dominique Billy is the natural mother of N.E.D., and asserts claims for loss of consortium on her own behalf.

5. Plaintiff Jacob Dotson is the natural father of N.E.D., and asserts claims for loss of consortium on his own behalf.

### C.    Expert Witnesses

1. Erin Bigler, Ph.D., was accepted by the Court as an expert witness for Plaintiffs in neuropsychology and neuroimaging.

2. Joan Schofield, R.N., B.S.N., CNLCP, was accepted by the Court as an expert witness for Plaintiffs in life care planning, having prepared a life care plan for N.E.D.

3. Stephen L. Nelson, Jr., M.D., was accepted by the Court as an expert witness for Plaintiffs in pediatric neurology, pediatrics, and epilepsy.

4. M. Brian McDonald, Ph.D., was accepted by the Court as an expert witness for Plaintiffs in economics.

5. Richard M. Dasheiff, M.D., was accepted by the Court as an expert witness for Defendant in neurology.

6. Darius Garcia, R.N., B.S.N., CNLCP, was accepted by the Court as an expert witness for Defendant in life care planning.

### D.    Injury at the GIMC and N.E.D.'s Current Condition

1. On February 28, 2016, N.E.D. was taken to the GIMC by her father, Mr. Dotson, after falling from playground equipment and striking her head.

2. As a direct and proximate result of Defendant's negligence, N.E.D. was deprived of oxygen, causing an anoxic brain injury.

3. N.E.D.'s brain injury caused profound cognitive impairment affecting all lobes and areas of her brain, including severe diffuse cerebral dysfunction, major neurocognitive disorder, and functional motor deficits.

4. N.E.D.'s severe anoxic brain injury has resulted in profound intellectual disability, including, but not limited to, the following:

   a. The loss of visual spatial ability, visual motor ability, academic functioning, emotional functioning, fine motor control, and muscle strength.

   b. Motor deficits, gross motor deficits, and muscle strength.

   c. The loss of executive function such as planning, programming, complex reasoning, problem solving, memory, and language.

   d. Profound deficits in verbal intellectual ability.

5. The basic deficits that N.E.D. currently suffers from will persist for the rest of her life.

6. N.E.D. has suffered from, or is reasonably certain to suffer from, severe neurological impairments in the future, including cognitive impairment, learning disabilities, emotional and behavioral issues, movement disorders, visual and/or hearing impairments, feeding and growth issues, decreased ability to learn or be meaningfully employed, and increased pain and suffering.

7. N.E.D. currently functions and will in the future function at a level similar to a young toddler (two years old or younger), requires intensive supervision, and is dependent in all areas of care.

8. N.E.D., who was nine years old at the time of trial, requires diapers for bowel and bladder management, and will occasionally take off her diaper in public, throw it, or play with the feces in it.

9. N.E.D. exhibits physically aggressive behaviors such as biting, grabbing, scratching, and pulling hair.

10. It is increasingly difficult for N.E.D.'s parents to physically restrain N.E.D. because she is strong and uncooperative.

11. N.E.D. exhibits socially inappropriate behaviors, such as trying to run away from her caregivers, not responding when called, and not understanding social boundaries.

12. Without continued medical and therapeutic treatment, N.E.D.'s condition will regress, leading to neurological decline.

### E. Ms. Billy's Care of N.E.D. Prior to Trial

1. Ms. Billy provided care for N.E.D. between N.E.D.'s discharge from the GIMC and the start of trial, including conducting feeding tube care; administering medications; keeping N.E.D. hydrated; using ankle-foot orthotics; stretching N.E.D.'s muscles (including facial muscles); reintroducing oral feeding; oral hygiene; gum massages; bathing; diaper changes; wheelchair usage; therapy exercises; and monitoring N.E.D. throughout each day.

2. The period of care is measured, for purposes of compensation, as three calendar years plus forty-four days, since N.E.D.'s discharge from the GIMC on August 3, 2016, for a total of 1,139 days.

3. Ms. Billy provided this type of care to N.E.D. for sixteen hours per day.

4. During the period of care, N.E.D. did not require care during the night (eight hours per day), beyond the kind of care typically provided by a parent.

5. The Court finds that the appropriate compensation per hour for non-licensed personnel acting in the same capacity as Ms. Billy did, over the years of Ms. Billy's care for N.E.D., is thirty-five dollars ($35.00) per hour.

6. The total amount of damages owed by Defendant to compensate Plaintiff Billy for the medical care and/or related benefits that she provided is $637,840.00.

### F. Non-Medical Damages

1. Plaintiffs have claimed non-medical damages, including loss of consortium, caused by Defendant's negligence.

2. The evidence supports the finding that Plaintiffs Billy and Dotson suffered loss of consortium with their daughter, N.E.D.

3. Ms. Billy experienced a significant loss of present and future relationship with N.E.D., due to N.E.D.'s injuries.

4. Mr. Dotson experienced a significant loss of present and future relationship with N.E.D., due to N.E.D.'s injuries.

5. The amount of recovery being limited by law, the Court awards $600,000.00 for Plaintiffs' non-medical damages. *See* N.M. STAT. ANN. § 41-5-6(A), (B).

### G. N.E.D.'s Future Medical Needs

1. The Court heard testimony from Dr. Richard M. Dasheiff, a neurologist who does not treat children, had not personally examined N.E.D., and whose testimony only tangentially related to her injuries. Dr. Dasheiff testified that N.E.D.'s life expectancy was 53 years.

2. Joan Schofield's life care plan was based on a national average life expectancy for women of 81 years.

     3.     The Court heard no evidence that was sufficient to dissuade it from relying on the life expectancy used in Joan Schofield's life care plan.

     4.     The Court finds that N.E.D.'s medical expenses should be provided for through age 81.

     5.     N.E.D. requires neuropsychological evaluations through age 21.

     6.     N.E.D. currently requires and will continue to require physical therapy, occupational therapy, and speech therapy throughout her life.

     7.     In addition to her other therapies, before the age of 21, N.E.D. would benefit from at least one stay at a pediatric rehabilitation center such as the Kennedy Krieger Institute in Baltimore, Maryland.

     8.     Throughout her life, N.E.D. will require routine and specialty medical care, routine medications, diagnostic studies, and lab work.

     9.     Throughout her life, N.E.D.'s care coordination will require case management services.

     10.     Before age 21, N.E.D. would benefit from a subacute residential adolescent program for a period of up to six months.

     11.     Throughout her life, N.E.D. will require medical supplies, durable medical equipment, and adaptive aids for independent functioning.

     12.     N.E.D. will require sixteen hours of care per day from a home health aide or other equivalent caregiver, both in childhood and adulthood, for as long as she remains in her family home.

     13.     N.E.D. does not require the care of a registered nurse or licensed practical nurse in the home.

14. When N.E.D. can no longer be cared for in her family home, she will require a full-time adult residential placement.

15. Up to age 21, N.E.D. would benefit from her family receiving respite care.

16. The total amount of N.E.D.'s future medical care and related benefits, as proven with reasonable certainty by Plaintiffs, is $14,219,657.00.[2]

### H. Procedural Background

1. This matter was heard at a bench trial from September 17, 2019, to September 20, 2019.

2. The parties submitted summation briefs in lieu of closing arguments on January 10, 2020.

3. The parties submitted post-trial briefs on January 31, 2020.

4. Responses to these briefs were submitted on February 28, 2020.

---

[2] Plaintiffs' expert in economics, Dr. M. Brian McDonald, adjusted Plaintiffs' projected future medical expenses to present value. Under New Mexico law, "[i]n a common law medical malpractice claim, a successful plaintiff is entitled to recover the present cash value of all 'medical care, treatment [,] and services reasonably certain to be received in the future.'" *Salopek v. Friedman*, 2013-NMCA-087, ¶ 57, 308 P.3d 139, 156 (citation omitted). Where the MMA applies, however, plaintiffs "shall be furnished with all medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice" with expenses to be paid as they are incurred. *See id.* (citing N.M. STAT. ANN. § 41-5-7(D)). Here, where the Federal Tort Claims Act applies and prohibits recurring obligations on behalf of the United States, necessitating a lump sum payment, the Court has taken Dr. McDonald's present value adjustments into account when calculating the award for future medical expenses. *See, e.g.*, *Hull by Hull v. United States*, 971 F.2d 1499, 1505 (10th Cir. 1992) ("[Under the Federal Tort Claims Act,] courts cannot subject the government to ongoing obligations like . . . continuing payments . . . .").

## III. CONCLUSIONS OF LAW

### A. Jurisdiction

1. This is an action against Defendant the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (2012) ("FTCA") for medical malpractice resulting in Plaintiffs' damages.

2. This Court has original and exclusive jurisdiction over Defendant under 28 U.S.C. § 1346(b)(1), and all claims against Defendant for the negligent acts and omissions of its employees, including employees of the GIMC.[3]

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b).

4. The federal procedural law applicable to this action is the FTCA and the Federal Rules of Civil Procedure.

5. New Mexico substantive and common law applies, including New Mexico tort law, common law, and the New Mexico Statutes. *See Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017) (citation omitted) ("State substantive law applies to suits brought against the United States under the FTCA.").

---

[3] Under the jurisdictional statute, district courts

shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

### B. Ms. Billy Is Entitled to Recover for Medical Care and/or Related Benefits that She Provided

1. The MMA permits recovery for medical care and related benefits. It is silent on who may provide that care. *See* N.M. STAT. ANN. § 41-5-3(D) (emphasis added) ("'[M]edical care and related benefits' means *all* reasonable medical, surgical, physical rehabilitation and custodial services and includes drugs, prosthetic devices and other similar materials reasonably necessary in the provision of such services.").

2. The Tenth Circuit has approved a district court's award of damages for medical expenses to parents who have provided nursing care "equivalent both in kind and quality" to that of a medical professional. *See Hill v. United States*, 81 F.3d 118, 119-20 (10th Cir. 1996) (upholding, in an FTCA medical malpractice suit in Colorado, the trial court's finding that the parental care was compensable when it was "equivalent both in kind and quality to the care" a Licensed Practical Nurse would have provided).

3. Ms. Billy's care of N.E.D., during the period between N.E.D.'s discharge from the GIMC and the start of trial, was equivalent both in kind and quality to "reasonable medical [and] physical rehabilitation." *See* N.M. STAT. ANN. § 41-5-3(D). This care is therefore compensable under the MMA, and is not subject to the MMA's $600,000.00 limitation. *See* N.M. STAT. ANN. § 41-5-6(B) ("The value of accrued medical care and related benefits shall not be subject to the six hundred thousand dollar ($600,000) limitation.").

4. Mr. Dotson did not provide care equivalent both in kind and quality to "reasonable medical [and] physical rehabilitation." Accordingly, the Court awards no additional damages for Mr. Dotson's pre-trial care of N.E.D.

### C.     Loss of Consortium of Ms. Billy and Mr. Dotson

1. Where a child is seriously injured, damages for loss of consortium are available to plaintiffs who are "'familial care-taker[s], such as . . . parent[s], who lived with and cared for the child for a significant period of time prior to the injury' . . . and the plaintiffs suffered 'emotional injury as a result of the loss of the child's companionship, society, comfort, aid, and protection.'" *See Freeland v. United States*, No. CIV 99-1500 MV/WWD, 2001 WL 37124944, *7 (D.N.M. Aug. 21, 2001) (quoting *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039 ¶ 31; 968 P.2d 774, 784).

2. Ms. Billy and Mr. Dotson, as parents and familial care-takers of N.E.D., a minor child, suffered emotional injuries due to N.E.D.'s severe brain damage.

3. Ms. Billy's and Mr. Dotson's loss of consortium damages are non-medical damages, and are therefore subject to the $600,000.00 cap under the MMA.

### D.     The MMA's $600,000.00 Cap for Non-Medical Damages Applies[4]

1. The MMA imposes a $600,000.00 limit on damages other than medical care and related benefits, in cases where a healthcare provider has committed malpractice.[5] N.M. STAT. ANN. § 41-5-6.

---

[4] Prior to trial, Plaintiffs indicated that they would be challenging the constitutionality of the MMA's cap on non-medical damages (Doc. 236). Post-trial, Plaintiffs submitted briefing on this issue (Doc. 254). The issue of constitutionality is currently pending before the New Mexico Supreme Court in *Siebert v. Okun, et al.*, No. S-1-SC-37231. This Court, sitting in diversity jurisdiction, declines to evaluate the constitutionality of a state law. *See, e.g.*, *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (citation omitted) ("The essence of diversity jurisdiction . . . is that a federal court enforces State law and State policy.").

[5] *See* N.M. STAT. ANN. § 41-5-6 ("Except for punitive damages and medical care and related benefits, the aggregate dollar amount recoverable by all persons for or arising from any injury or death to a patient as a result of malpractice shall not exceed six hundred thousand dollars ($600,000) per occurrence. . . . The value of accrued medical care and related benefits shall not be subject to the six hundred thousand dollar ($600,000) limitation.").

2. In the cases where the United States is a defendant, it will be held liable only to the extent that a private employer would be held responsible for its employees' breaches of care. *See* 28 U.S.C. § 1346(b)(1); *See Haceesa v. United States*, 309 F.3d 722, 729 (10th Cir. 2002) ("[T]he language of § 1346(b) . . . supports the view that FTCA constitutes respondeat superior liability.").

3. Hospitals meet the "healthcare provider" requirement of the MMA. *See Haceesa*, 309 F.3d at 729-30 ("[B]ecause an analogous suit against a private hospital based on the actions of employees who are not themselves health care providers would be subject to the recovery cap, [this] FTCA suit against the Government is also subject to the $600,000 cap."); *see also Nez v. United States*, 367 F. Supp. 3d 1245, 1270 (D.N.M. 2019) (citations omitted) ("New Mexico's $ 600,000 recovery cap applies to the finding of liability against the United States in this case . . . [because, in FTCA cases], damages are determined in accordance with the law of the state in which the tort was committed.").

4. Accordingly, the Court finds that the GIMC stands in the place of a private employer here. Since Plaintiffs' action against a private hospital would be limited to $600,000.00 for non-medical damages, their recovery is likewise limited here. *See Haceesa*, 309 F.3d at 729-30; *Louis v. United States*, 54 F. Supp. 2d 1207, 1211-12 (D.N.M. 1999) (citations omitted) ("[T]he FTCA . . . should be strictly interpreted to limit governmental liability.").

5. The total amount of damages owed by Defendant for non-medical damages is capped by the MMA at $600,000.00. *See* N.M. STAT. ANN. § 41-5-6.

### E. Standard of Proof for Future Medical Expenses

1. Under New Mexico law, Plaintiffs carry the burden of proving future medical expenses "with reasonable certainty." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 25, 146 N.M. 853, 860, 215 P.3d 791, 798 (citation omitted) ("A party seeking to

recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty."); *Regenold v. Rutherford*, 1984-NMCA-021, ¶ 23, 101 N.M. 165, 170, 679 P.2d 833, 838 (stating the standard as "medically probable"). In medical malpractice cases, the Court of Appeals of New Mexico has held that a physician's testimony that future medical needs are "likely" or "probable" may be sufficient. *See Regenold*, 1984-NMCA-021, ¶ 23, 101 N.M. at 170, 679 P.2d at 838.

2.      The Court finds that Plaintiffs proved the damages enumerated herein with reasonable certainty.

### F.      Attorney Fees, Interest, and Costs

1.      Attorney fees under the FTCA are limited to twenty-five percent of the judgment. *See* 28 U.S.C. § 2678. Plaintiffs are entitled to attorney fees in the amount of twenty-five percent of the total judgment.

2.      Plaintiffs are entitled to New Mexico Gross Receipts Tax in the amount of 7.875 percent of the award of attorney fees. *See* N.M. STAT. ANN. §§ 7-9-1–7-9-117.

3.      In FTCA cases against the United States, post-judgment interest is available to prevailing plaintiffs. *See* 31 U.S.C. § 1304(b)(1)(A) (2012) ("[O]n a judgment of a district court, [interest begins to accrue] only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance."). Plaintiffs are entitled to post-judgment interest as calculated pursuant 31 U.S.C. § 1304(b)(1)(A).

4.      Plaintiffs are entitled to their taxable costs, pursuant to 28 U.S.C. § 1920.

5.  Pre-judgment interest may not be awarded against the United States. *See* 28 U.S.C. § 2674.

## IV. RELIEF

The Court finds that Plaintiffs have proven the following damages to a reasonable degree of certainty:

1. Past medical care: $500,000.00;

2. Compensation for Dominique Billy's care of N.E.D. prior to trial: $637,840.00;

3. Loss of consortium by Dominique Billy and loss of consortium by Jacob Dotson: $600,000.00;

4. Future medical expenses, to be placed in trust as determined in a proceeding following this opinion: $14,219,657.00;

5. Attorney fees in the amount of twenty-five percent of the judgment, as finalized in a proceeding following this opinion;

6. New Mexico Gross Receipts Tax in the amount of 7.875 percent of the amount for attorney fees;

7. Plaintiffs' taxable costs to be submitted in a separate Bill of Costs, as finalized in a proceeding following this opinion; and

8. Post-judgment interest calculated pursuant to 31 U.S.C. § 1304(b)(1)(A).

9. Other issues presented in this case will be decided in subsequent opinion(s) by the Court.

10. Following opinion on the remaining issues, final judgment will be entered.

          /s/ Richard K. Eaton
          Richard K. Eaton, Judge

Dated: July 27, 2020